Kenneth P. PHOENIX, Petitioner,
Appellant,

v.

James MATESANZ, Respondent,
Appellee.

No. 98–2048.

United States Court of Appeals,
First Circuit.

Heard June 10, 1999.

Decided Aug. 19, 1999.

Robert L. Sheketoff with whom Sheketoff & Homan was on brief for appellant.

William J. Meade, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, Commonwealth of Massachusetts, was on brief for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and SELYA, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Kenneth P. Phoenix appeals from the district court's denial of his petition for habeas corpus relief from his 1988 murder conviction. We affirm the district court's determination that Phoenix's claim of ineffective assistance of counsel was not procedurally barred. As to the merits of the ineffective assistance claim, we remand to the district court for further proceedings consistent with this opinion.

## I. *FACTS*

On June 3, 1988, Phoenix was convicted of first-degree murder in the Hampshire Superior Court of Massachusetts. For the facts of his conviction we look first to the decision of the Massachusetts Supreme Judicial Court ("SJC") affirming Phoenix's conviction on direct appeal. *See Commonwealth v. Phoenix*, 409 Mass. 408, 567 N.E.2d 193 (1991).

Raymond Green was the power plant facility manager at the Belchertown State School, supervising sixty-three employees, including Phoenix. He worked in an office on the second floor of the powerhouse on the school grounds. On August 4, 1986, Green's secretary found him dead in his office, shot five times by a .22 caliber

firearm. The police retrieved pieces of a green scouring pad from Green's face and from the floor of his office. In a metal drum on the first floor of the powerhouse, they also discovered a crumpled brown paper bag and a rolled-up piece of green scouring pad. The drum was situated next to the entrance to a tunnel system that connected the powerhouse with other school buildings.

The Commonwealth took the position, based largely on fingerprint and blood evidence found at the scene, that Phoenix had entered the powerhouse undetected through the tunnel system and went to Green's office while Green was out getting his lunch. As part of its theory, the Commonwealth reasoned that Phoenix had constructed a homemade silencer by wrapping a gun in a green scouring pad and placing it in a paper bag. When Green returned to his office, Phoenix allegedly shot him five times at point blank range. Phoenix escaped through the tunnel system, dumping the bag and the scouring pad in the metal drum on his way out. The weapon was not recovered.

As indicated, the Commonwealth based its case largely on its experts' interpretation of certain physical evidence found at the scene.[1] Examination of the paper bag had revealed several blood stains, one of which contained a fingerprint. After chemical treatment, additional fingerprints appeared, only some of which were identifiable. At trial, the Commonwealth called Dr. Moses Schanfield, an expert serologist, who testified that the blood from the one interpretable stain was consistent with Green's blood and that it could not have been Phoenix's blood. The Commonwealth also called two fingerprint experts, who stated that each of the identifiable prints found on the bag belonged to Phoenix.

Before trial, Phoenix's counsel, William M. Bennett, retained Dr. Brian Wraxall, a forensic serologist, to assist in the defense.

According to an affidavit filed subsequent to trial, Wraxall observed the allotype testing performed by Dr. Schanfield shortly before trial, and determined that the test results were scientifically meaningless and that there was no scientific basis for concluding that the evidence bloodstain was consistent with Green's blood or not consistent with Phoenix's. He discussed these conclusions with attorney Bennett, who did not, however, call Dr. Wraxall to the stand.

Bennett had also retained Professor Herbert McDonnell, a fingerprint analyst. Based upon his review of photographs of the prints recovered from the paper bag, McDonnell stated in a post-trial affidavit that he advised Bennett of his opinion that there was insufficient detail to conclude either that the print was Phoenix's or that it was not. Bennett never called Professor McDonnell to the stand.

## II . PROCEDURAL HISTORY

On December 20, 1988, Phoenix filed a motion for a new trial on the ground that his trial had been tainted by juror misconduct. The motion did not mention ineffective assistance of counsel. The superior court denied the motion on February 6, 1989.

Phoenix applied for a stay of further execution of sentence on October 31, 1989. Again, the grounds for that application did not include ineffective assistance of counsel. On April 20, 1990, Phoenix filed a supplemental memorandum in support of his application for a stay, which included an affidavit of Dr. Wraxall stating, inter alia, his opinion that "no conclusion could be drawn regarding the types of the donors of the blood on the paper bag." The Commonwealth moved to strike this affidavit. The superior court denied Phoenix's application for a stay on May 25, 1990.

Phoenix also filed a direct appeal of his conviction, which set forth several grounds

---

1. The Commonwealth also presented testimony by Phoenix's co-workers that Green had a strict managerial style, and that Phoenix was heard to say that he "hated" Green.

but did not raise the issue of ineffective assistance of counsel. Phoenix, however, sought leave to supplement the record on appeal to add an affidavit by Dr. Wraxall concerning the allotype testing. *Phoenix,* 567 N.E.2d at 199 n. 8. The Supreme Judicial Court denied this request, finding that Phoenix was aware of Dr. Wraxall and his opinions as to the testing at the time of trial, but that Bennett chose not to call him to testify as a matter of strategy. *Id.* On February 28, 1991, the SJC affirmed Phoenix's conviction pursuant to Mass. Gen. L. ch. 278, § 33E.

Nearly five years later, on January 22, 1996, Phoenix, represented by new counsel, filed a second motion for a new trial. He alleged that he had been denied effective assistance of counsel because, *inter alia,* his trial counsel (1) failed to call Dr. Wraxall to rebut Dr. Schanfield's trial testimony, and (2) failed to call Professor MacDonnell to rebut the Commonwealth's fingerprint evidence. Phoenix asserted that these failures violated his rights under the Sixth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights.

On March 18, 1996, the Superior Court denied Phoenix's motion without an evidentiary hearing. Upon review of the Wraxall affidavit, the court noted that it was essentially the same affidavit that Phoenix had filed in support of his motion for a stay of further execution of his sentence and that the SJC had refused to add to the record on direct appeal. Citing *Commonwealth v. Gagliardi,* 418 Mass. 562, 638 N.E.2d 20 (1994), it held that Phoenix had waived the issue of Bennett's failure to call Dr. Wraxall to testify by not raising it on appeal or in his first motion for a new trial. The court also stated that it did not believe that Bennett's decision not to call Dr. Wraxall as a witness could "be considered to constitute ineffective representation."

As to Bennett's failure to call Professor McDonnell to testify at trial, the court determined that McDonnell's opinion did not rule out the possibility that the unknown fingerprint was Phoenix's, and that the Commonwealth's witnesses testified convincingly that the print did belong to Phoenix. Accordingly, the court found that McDonnell's testimony would not have been helpful to Phoenix, and that Bennett was not ineffective in choosing not to put him on the stand.

On October 21, 1996, represented by new counsel yet again, Phoenix sought leave from a single "gatekeeper" justice of the SJC to appeal the denial of the second motion to dismiss. *See* Mass. Gen. L. ch. 278, § 33E. He argued that his appellate counsel had had no opportunity to raise the issue of Wraxall's testimony since the affidavit was never made part of the record. Accordingly, Phoenix contended, the superior court judge erred in holding that his ineffectiveness claim was waived.

The single justice denied Phoenix's application on May 8, 1997, after extensive briefing but without an evidentiary hearing. He held that although the issue of whether Phoenix waived his argument regarding the Wraxall affidavit "may be novel," the underlying issue of ineffective assistance of counsel lacked substance and thus did not warrant a new trial. *Id.* (requiring a motion for a new trial to raise a question that is "new and substantial"). Noting that "the reliability of the Commonwealth's testimony on this score had been so thoroughly canvassed both at trial, by cross-examination by defendant's counsel, and then examined by the full court on plenary review," the single justice rejected the ineffective assistance claim as to the Wraxall affidavit on its merits. Similarly, he upheld the motion judge's ruling that, in the context of the "strong testimony" by the Commonwealth's experts, McDonnell's testimony would not have been helpful to Phoenix's defense, and thus could not support an ineffective assistance claim. The justice cited neither federal nor state law in the opinion.

On January 29, 1998, Phoenix filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). On July 30, 1998, the district court denied the petition without a hearing. It held that Phoenix's claim of ineffective assistance was not in procedural default, but that "the petitioner has failed to establish that the performance of his counsel at trial in the Massachusetts Superior Court fell below an objective standard of reasonableness in light of all the circumstances." The district court granted a certificate of appealability on September 9, 1998.

## III. *ANALYSIS*

■ Phoenix's habeas petition is governed by the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), which provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d). In reviewing a ruling on a petition for a writ of habeas corpus, we examine the district court's legal conclusions de novo. *Simpson v. Matesanz,* 175 F.3d 200, 205 (1st Cir.1999).

### A. *Procedural default*

■ Habeas review in a federal court is available as to a claim "adjudicated on the merits in State court proceedings," but only in instances affecting or involving clearly established federal, not state, law. *See id.* at 205–06, quoting 28 U.S.C. § 2254(d). These requirements reflect the long-standing rule that federal courts do not review state court decisions that rest on independent and adequate state grounds. *Id.,* citing *Trest v. Cain,* 522 U.S. 87, 118 S.Ct. 478, 479–80, 139 L.Ed.2d 444 (1997). Such grounds exist where "the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement." *Id.* at 206, quoting *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1172, 140 L.Ed.2d 182 (1998). In such a case, "[c]onsiderations of comity and federalism bar the federal court's review." *Id.*

■ Because Phoenix was convicted of first-degree murder, his appeals from the denial of state court collateral attacks on his conviction after his direct appeal were governed by Massachusetts General Laws chapter 278, § 33E. That provision permits further review of a defendant's claim by the SJC only where a gatekeeper justice of the SJC finds that the claim is "new and substantial." Mass. Gen. L. ch. 278, § 33E. The gatekeeper's determination is final and unreviewable. *Commonwealth v. Ambers,* 397 Mass. 705, 493 N.E.2d 837, 841 (1986).

The Commonwealth argues that the district court erred in holding that Phoenix's ineffective assistance claim was not procedurally barred. It contends that the gatekeeper justice's decision pursuant to § 33E did not reach the merits of that claim and was independent of federal law. The Commonwealth contends, accordingly, that the decision constituted a procedural bar to habeas review.

We disagree in the present special circumstances. We recognize that most frequently a single justice's § 33E determination that an issue is not "new and substantial" will depend on state procedural or, perhaps, substantive law, ruling out federal habeas review. *See McLaughlin v. Gabriel,* 726 F.2d 7, 9 (1st Cir.1984) (in general, § 33E determination does not reach merits of claim, but is merely a state law "screening" device). In *Simpson,* however, we suggested that this might not always be true,

stating that a denial of review under § 33E is an independent and adequate state ground *"where there has been procedural waiver below."* *Simpson*, 175 F.3d at 206, 207 (emphasis supplied). We went on to say that, hypothetically, habeas review could be appropriate where a gatekeeper justice's denial under § 33E was based on findings, supported by federal law, that the petitioner's claim was new but not substantial. *Id.* at 207 n. 4. *See also McLaughlin*, 726 F.2d at 9 (possibility of special circumstances in which gatekeeper determines federal constitutional question).

Whether the state court decision here is or is not impervious to habeas review depends on whether it rests, expressly or inferentially, on a state-law procedural waiver (or some other state law consideration), or whether, instead, it involves the resolution of the merits of Phoenix's federal constitutional claim. *See Simpson*, 175 F.3d at 206–07; *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir.1995). In determining the above, the opinion of the SJC gatekeeper justice, as the "last reasoned opinion" of a state court addressing those claims, is the focus of our attention. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Simpson*, 175 F.3d at 207.

In *Simpson*, the petitioner had filed several motions for a new trial challenging the trial court's jury instructions, each of which was denied on procedural waiver grounds. 175 F.3d at 203–04. When the petitioner sought leave to appeal to the SJC the denial of his sixth motion for a new trial, the gatekeeper SJC justice denied his § 33E application, without explanation, on the ground that he had not presented "new or substantial issues." *Id.* Citing an unpublished district court opin-ion, *Little v. Murphy*, 1998 WL 704415 (D.Mass. May 21, 1998), the federal habeas court had held that the "failure to get past the gatekeeper does not by itself block federal habeas review unless the single Justice clearly bases his denial of leave to appeal on a procedural bar." *Id.* at 204.

We reversed the district court and held that because the lower state court decisions were based on procedural waiver, "the denial of review under § 33E is an independent and adequate state ground that bars federal habeas review." *Id.* at 206. Without deciding whether *Little* was good law, we distinguished that case on the ground that, inter alia, the state trial court in *Little* had reached the merits of the petitioner's claims and had held evidentiary hearings. *Id.* at 207.

■ The question now before us, therefore, is whether the SJC gatekeeper's determination that Phoenix's ineffective assistance issue was perhaps new but is not substantial constitutes independent and adequate state grounds precluding federal habeas review. If we look solely at the decisions in the superior court, this case would fall somewhere between *Little* and *Simpson*. As in *Little*, the state trial court reached the merits of Phoenix's ineffective assistance argument as regards the McDonnell affidavit; but, as in *Simpson*, the state trial court cited waiver as a ground for denying post-conviction relief as regards the Wraxall affidavit, and the court held no evidentiary hearing.

The SJC gatekeeper justice, however, in determining for purposes of § 33E whether Phoenix's ineffective assistance claim was "substantial," considered the merits of that claim in respect *both* to the Wraxall and McDonnell affidavits.[2] "If the last

---

2. This is not a case where the single justice found a procedural default, but then briefly reviewed the merits of a claim solely to determine the state law question of whether there was a "substantial risk of a miscarriage of justice." *See Burks*, 55 F.3d at 716 n. 2. We have held that such a limited review, when plainly labeled, "does not undercut the adequacy and independence of the state grounds." *Id.; see also Brewer v. Marshall*, 119 F.3d 993, 1000 n. 7 (1st Cir.1997). Here, however, the single justice's opinion was fairly detailed, did not rest on procedural default,

state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." *Ylst,* 501 U.S. at 801, 111 S.Ct. 2590. Here, unlike the situation in *Simpson,* it cannot be inferred that the gatekeeper denied relief on the procedural ground discussed by the superior court in reference to the Wraxall affidavit. The gatekeeper justice specifically indicated that he was not dismissing Phoenix's ineffective assistance claim on the ground of lack of novelty or on some other theory compatible with waiver. Instead, he expressly determined that the ineffective assistance claim lacked substance, thus reaching its merits and superseding the superior court's earlier finding of waiver as to the Wraxall affidavit. *See id.* Hence, like the district court, we do not conclude that habeas review is barred because the challenged state decision rests upon some procedural bar erected by state law.[3]

■ Our inquiry does not, of course, end here. Even holding that the gatekeeper justice's decision rested not on procedural default but on the merits of Phoenix's ineffective assistance claim, we may not entertain habeas review if the merits determination was grounded in state law. *Cf. Simpson,* 175 F.3d at 206 n. 4. The Commonwealth suggests that because the single justice's decision did not specifically cite to federal law, it rests on independent and adequate state grounds.

There is no force to that contention. The Supreme Court recently refined its

explanation of the circumstances under which courts will presume there is no independent and adequate state law ground for the state court's decision:

> In habeas, if the decision of the last state court to which the petitioner presented his federal claims *fairly appeared to rest primarily on the resolution of those claims, or to be interwoven with those claims,* and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(emphasis supplied).

■ Phoenix presented his ineffective assistance claim to the state courts expressly under federal and state law: he cited, as a basis of the claim, both the Sixth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights, listing federal as well as state cases in support of his argument. If either constitutional ground were correct, he was entitled to prevail, since the federal constitution trumps the state's, while the state is allowed to choose to provide a stricter level of protection than the federal.[4] *See Bustop v. Bd. of Educ. of Los Angeles,* 439 U.S. 1380, 1381, 99 S.Ct. 40, 58 L.Ed.2d 88 (1978); *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). State courts, moreover, have the duty and right to construe and apply both the federal and state constitutions. *See Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 320, 97

and did not expressly invoke a "miscarriage of justice" standard under Massachusetts law.

3. Because we do not conclude that Phoenix's ineffective assistance claim was in procedural default, we do not need to consider whether we should reach the merits of his habeas case on the grounds that he has established his "actual innocence" or "cause and prejudice" for a default. *See Simpson,* 175 F.3d at 209–10.

4. Actually, it would seem exceedingly unlikely that Phoenix's claim would be treated differ-

ently under the state constitutional standard than under the federal. The standard for ineffective assistance under Massachusetts law appears functionally equivalent to the federal standard. *See Scarpa v. DuBois,* 38 F.3d 1, 7 n. 4 (1st Cir.1994). This court has said that "[t]he SJC has made clear that it ordinarily considers questions involving 'assistance of counsel' as coming 'within the meaning of the Sixth Amendment.'" *Id.,* quoting *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878 (1974).

S.Ct. 599, 50 L.Ed.2d 514 (1977). Thus, for the single justice to have determined that Phoenix's ineffective assistance claim lacked merit, we can only assume that he examined it under the relevant federal as well as state standard. We conclude that the single justice's determination that Phoenix's ineffective assistance claim was insubstantial necessarily rejected Phoenix's contrary assertion made under the federal constitution.

### B. *Ineffective assistance of counsel*

 Having determined that there is no procedural bar to Phoenix's ineffective assistance claim and that the single justice's dismissal of the claim necessarily involved the application of federal law, we turn to whether the district court properly dismissed the habeas petition on the ground that the federal ineffective assistance claim lacked merit.[5] *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (whether counsel's performance fell below an objective standard of reasonableness and resulted in prejudice to defendant). Citing *Strickland*, the district court held that Phoenix "failed to establish that the performance of his counsel at trial in the Massachusetts Superior Court fell below an objective standard of reasonableness in light of all the circumstances." Phoenix argues that this conclusion was incorrect.

Under AEDPA, the district court must determine whether the adjudication of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This represents a new statutory framework for habeas petitions.

Before the passage of AEDPA, a petitioner was entitled to de novo review of his constitutional claims. *See Martin v. Bissonette*, 118 F.3d 871, 874–75 (1st Cir. 1997); *see also Scarpa*, 38 F.3d at 9. The district court's one-page opinion does not indicate the scope of its analysis.

This is not a case in which significant independent evidence supports the conviction and thereby reduces the chance that Phoenix's conviction would be affected by the decision whether to call the rebuttal experts in question. Here, the Commonwealth's case rested almost entirely on the blood and fingerprint evidence challenged by the Wraxall and McDonnell affidavits. The superior court dismissed the importance of McDonnell's testimony on the ground that he did not deny that the fingerprints could be those of Phoenix. McDonnell simply opined that the bloodstained prints were inadequate for accurate expert analysis. However, where the question of conviction turns almost entirely on the reliability of identifying the prints, McDonnell's opinion goes directly to whether the prosecution's evidence sufficed to establish guilt beyond a reasonable doubt. This is not to say that Phoenix's ineffective assistance argument necessarily satisfies the rigorous standard set forth in AEDPA, which requires him to show that the single justice's decision contravened clearly established federal law as determined by the Supreme Court, or that it met the standard set forth in *Strickland*. We say merely that the circumstances warrant a more thorough and explicit consideration of his claim in the district court than has so far occurred.

As the state trial court and SJC single justice indicated, consideration of Phoe-

---

**5.** The Commonwealth's contention that Phoenix's claim is not exhausted for habeas purposes because it has never been presented to the full bench of the SJC is without merit. The exhaustion requirement does not require that the SJC have addressed or decided Phoenix's federal claim; rather, it requires only that Phoenix have presented the substance of that claim to the highest available state court

"so that the state had the first chance to correct the claimed constitutional error." *See Hall v. DiPaolo*, 986 F.2d 7, 11 (1st Cir.1993), quoting *Lanigan v. Maloney*, 853 F.2d 40, 42 (1st Cir.1988). Here, Phoenix expressly presented his ineffective assistance claim to the superior court and to the SJC single justice, whose determination was final and unreviewable by the full court.

nix's ineffective assistance claim appears to properly encompass an evaluation, inter alia, not only of the Wraxall and McDonnell affidavits, but of the testimony of the Commonwealth's experts and of Bennett's cross-examination of those experts. It does not appear whether the district court had before it the trial transcripts necessary to such a review. On remand, the district court should review the essential parts of the trial record, and can also determine whether or not testimony from counsel and other witnesses is called for.

We vacate the order of dismissal and remand for further proceedings consistent with this opinion.