Timothy DUGUAY, Petitioner,

v.

Luis SPENCER, Respondent.

Civil Action No. 03–11575–NMG.

United States District Court,
D. Massachusetts.

Nov. 3, 2006.

Timothy Duguay, Norfolk, MA, pro se.

Annette C. Benedetto, Department of Attorney General, Boston, MA, for Respondent.

## MEMORANDUM & ORDER

GORTON, District Judge.

Timothy Duguay ("Duguay") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent, Luis Spencer ("Spencer"), filed the pending motion to dismiss the petition on June 20, 2006. Duguay opposes that motion to dismiss and has filed subsequent motions: 1) to amend his habeas petition, 2) for DNA testing/analysis of physical evidence, 3) for expansion of the record and 4) for an evidentiary hearing.

## I. Factual and Procedural Background

### A. Factual History

On November 7, 1995, a Plymouth County grand jury returned an indictment against Duguay charging him with the murder of Robert Madera ("Madera"). Duguay and Madera were neighbors and became involved in a homosexual relationship when Duguay was 17 years old and Madera was 12 years old.[1] The relationship continued over the next five years until Madera's death. Madera alternated between maintaining intimacy with and distancing himself from Duguay.

After a period in which Duguay and Madera had maintained intimate relations, they planned to spend a Sunday night together, one night before Madera's murder. Duguay and Madera did not spend the night together, however, because Madera instead went out with a female friend and spent the night at his own house. The following morning, Duguay called Madera and demanded to know where he had been the night before. Duguay also drove to Madera's house twice that same day. Each time, Madera refused to talk to Duguay and told him to leave.

Duguay had a telephone conversation approximately one to two hours before Madera was murdered during which Duguay told a friend that he was tired of being "hurt" by Madera and that he was going to kill him. Approximately 20 minutes before Madera's death, Duguay telephoned Madera's home and left a recorded voice message for Madera's mother in which he informed her of his homosexual relationship with her son and that he was going to make her son "answer for the head games he's played with me." Duguay also told Madera's mother that her

---

1. The description of the facts is based on the findings of the Supreme Judicial Court of the Commonwealth of Massachusetts, *Common-* *wealth v. Duguay*, 430 Mass. 397, 398–400, 720 N.E.2d 458 (1999), which are presumed to be correct. 28 U.S.C. § 2254(e)(1).

son "was not going to threaten me ... because I'm just going to turn myself in and I've already started that" and that she should "get ready for a fun ride at the courthouse."

Shortly before 8:00 p.m. on the night of the murder, Madera stumbled out of his house. He had been stabbed 21 times in his neck, face and chest. One of Madera's relatives, who lived in a neighboring house, saw Madera and telephoned emergency services. As the first emergency vehicle arrived on the victim's street, the driver noticed a person in dark clothing walking away from the victim's house. The emergency personnel were not able to resuscitate Madera and he died on the way to the hospital as a result of blood loss caused by the multiple stab wounds.

After learning from a neighbor that Duguay's vehicle was seen leaving the front of Madera's house earlier that evening, the police went to Duguay's house. When the police arrived, Duguay informed them that he knew they were coming. The police recited incomplete *Miranda* warnings to him and Duguay got his jacket and rode in a cruiser to the police station. In a conversation with police officers on the way to the station house, Duguay told the officers, "If I tell you what happened, you'll put me in jail for the rest of my life."

The police advised Duguay of his *Miranda* warnings again and then began to interview him at the police station. Duguay initially denied his sexual relationship with Madera but later admitted to it after police informed him that they knew about the message he had left Madera's mother. Duguay told the police that he had been wearing the same dark clothing since the middle of the day.

Duguay consented to testing for the presence of blood on his person and clothing. A police chemist performed an ortho-tolidine test. That test is for screening purposes only because it yields a positive result for substances as diverse as vegetation, food items and detergents as well as for human blood. Duguay tested positive on his hands, the soles of his feet and the soles of his sneakers.

Subsequent to the ortho-tolidine test, the police obtained a search warrant and performed the same testing on Duguay's house, car and clothing. Results were positive in Duguay's bathtub, car, on a light switch and clothing. Nevertheless, the police did not find Duguay's fingerprints at Madera's house and the hairs found there were inconsistent with the hair of either Madera or Duguay.

## B. Procedural History

On November 24, 1997, Duguay was convicted of first degree murder on the theory of extreme atrocity or cruelty. Duguay appealed and the Supreme Judicial Court of Massachusetts ("the SJC") affirmed the judgment of conviction on December 7, 1999.

Duguay subsequently filed several post-conviction motions, which were denied by the trial court, as well as a motion for leave to appeal the denial of those motions with a single justice of the SJC pursuant to M.G.L. c. 278, § 33E, which was also denied. Duguay's post-conviction motions are described in greater detail below in the section on procedural default.

Duguay filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 with this Court on August 20, 2003. The respondent filed the pending motion to dismiss on June 20, 2006. Duguay filed an opposition to that motion, a motion to amend his habeas petition and a motion for DNA testing/analysis of physical evidence on August 14, 2006. Duguay then filed motions for expansion of the record and

for an evidentiary hearing on September 7, 2006.

## II. *Legal Analysis*

### A. Standard of Review

The standard of review to be applied to Duguay's petition for a writ of habeas corpus and respondent's motion to dismiss is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). There are two potential bases for granting a petition for a writ of habeas corpus under 28 U.S.C. § 2254(d): the state adjudication either 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A state court decision is considered an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. *Id.* at 407, 120 S.Ct. 1495. An unreasonable application exists when there is "some increment of incorrectness beyond error." *Norton v. Spencer*, 351 F.3d at 8 (1st Cir.2003). A state court decision is "unreasonable if it is devoid of record support for its conclusion for its conclusion or is arbitrary." *Id.*

### B. Respondent's Motion to Dismiss

The respondent filed a motion to dismiss Duguay's petition for a writ of habeas corpus on June 20, 2006. On August 14, 2006, Duguay filed his opposition to respondent's motion to dismiss as well as a motion to amend his petition for writ of habeas corpus. Duguay requested therein that the Court dismiss without prejudice Grounds One and Three of his § 2254 petition. That request will be granted and therefore Grounds One and Three will be dismissed without prejudice. The remaining grounds for relief are addressed as follows.

#### 1. Ground Two

In Ground Two, Duguay contests the trial court's admission into evidence of "highly unreliable and highly prejudicial" ortho-tolidine test results, absent corroborating blood and/or forensic evidence. Ortho-tolidine is a chemical that is used to detect the presence of blood. Duguay contends that the admission of the results of ortho-tolidine tests violated his due process rights under the Fifth and Fourteenth Amendments.

Prior to trial, Duguay filed a motion in limine to exclude evidence of the results of the ortho-tolidine tests, which was denied. The respondent does not dispute that Duguay has exhausted the remedies available in state court to challenge the introduction of this evidence. Rather, the respondent contends that Ground Two presents an issue of state law that is inappropriate for federal habeas corpus review.

A federal court may issue a writ of habeas corpus only when a prisoner is held in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254. Errors of state law, in and of themselves, do not provide a basis for federal habeas corpus relief. *Estelle v.*

*McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ Respondent contends that the admissibility of the results of ortho-tolidine tests is a question of state law only, and that such evidence is admissible in the Commonwealth. The SJC has held that results of ortho-tolidine tests, and expert testimony relating to such test results, are admissible in evidence even though such tests may demonstrate positive results for substances other than human blood. *Commonwealth v. Gordon*, 422 Mass. 816, 839–40, 666 N.E.2d 122 (1996). Because the admission of the ortho-tolidine test results comports with state evidentiary law, habeas review is foreclosed on that ground.

Duguay further contends, however, that the SJC did not address the constitutional question as to whether admission of the ortho-tolidine evidence violates his due process rights. *See Commonwealth v. Duguay*, 430 Mass. 397, 720 N.E.2d 458 (1999). He argues that even if the trial judge's decision to admit certain evidence was correct as a matter of state evidentiary law, that evidence may, nonetheless, violate his due process rights if it so infused the trial with inflammatory prejudice as to have rendered a fair trial impossible. Duguay urges this court to review the trial court's admission of the evidence *de novo* because, he claims, the constitutional issue was raised, but not addressed, in his appeal before the SJC. *See Lynch v. Ficco*, 438 F.3d 35, 44 (1st Cir.2006).

Duguay is correct that the SJC did not address the particular alleged constitutional error, albeit the precise argument he makes here was not raised on direct appeal. On direct appeal, Duguay challenged the ortho-tolidine test results as violative of due process because such test results lacked reliability on which to base his conviction without additional corroborating evidence. The SJC squarely addressed that issue by stating "[t]he Commonwealth need not adduce additional confirmatory evidence before offering the results of the ortho-tolidine test." *Duguay*, 430 Mass. at 402, 720 N.E.2d 458. In his memorandum opposing respondent's motion to dismiss, Duguay now contends that evidence of ortho-tolidine tests violates due process because it is so prejudicial it renders a fair trial impossible. That is a different argument which was not addressed by the SJC because it was not briefed by Duguay on direct appeal.

■ Giving Duguay the benefit of the doubt that his current argument was raised in "substance" before the SJC and was therefore exhausted in state proceedings, *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), and reviewing the trial court's decision *de novo*, Duguay's argument still fails. While the United States Supreme Court has suggested that, in some circumstances, otherwise admissible evidence may "so infuse the trial with unfairness as to deny due process of law", *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 86 L.Ed. 166 (1941), that is an extraordinarily high burden to meet and Duguay has not met it here. Indeed, that standard was not met in any of the cases that Duguay cites in his opposition to the motion to dismiss. *See Lisenba*, 314 U.S. at 228, 62 S.Ct. 280 (introduction of live rattlesnakes, with which defendant attempted to murder his wife, not a violation of due process); *Allen v. Snow*, 635 F.2d 12, 15 (1st Cir.1980); *Barresi v. Maloney*, 273 F.Supp.2d 144, 154 (D.Mass.2003); *DiBenedetto v. Hall*, 176 F.Supp.2d 45, 54 (D.Mass.2000); *Domaingue v. MacDonald*, 978 F.Supp. 53, 57 (D.Mass.1997).

In his SJC appellate brief, Duguay admitted that his due process challenge to ortho-tolidine testing was "novel." The Supreme Court has never held that evi-

dence relating to ortho-tolidine test results, or the results of materially similar chemical tests, is so prejudicial as to deny due process of law. Because Duguay was permitted to, and did, cross-examine the expert witness at trial regarding the limitations of orthotolidine testing, the admission of that evidence was not so prejudicial as to render a fair trial impossible. It cannot be said, therefore, that the trial court's admission of the ortho-tolidine test results and related expert testimony was "contrary to" or an "unreasonable application of" a clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

## 2. Grounds Four and Five

In Grounds Four and Five, Duguay asserts that additional rulings of the trial court violated his due process rights under the Fourteenth Amendment. The respondent counters that the SJC's adjudication with respect to such rulings was not contrary to nor an unreasonable application of Supreme Court law.

In Ground Four, Duguay contends that his Fourteenth Amendment due process rights were violated by the trial court's failure to grant his motion for a required finding of not guilty because the evidence presented by the Commonwealth was insufficient as a matter of law to establish his guilt beyond a reasonable doubt. Duguay points to the lack of forensic evidence connecting him with the crime scene and other exculpatory facts.

When reviewing a sufficiency of evidence claim, the evidence must be viewed in a light most favorable to the prosecution, and the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To the extent that conflicting inferences might have been drawn from the evidence, those conflicts are for the jury to resolve, and they do not render the evidence insufficient. *Id.*

■ The SJC reviewed the evidence in Duguay's case and drafted a comprehensive summary of the evidence for inclusion in its decision. *Duguay,* 430 Mass. at 398–400, 720 N.E.2d 458. In reviewing the denial of the defendant's motion for a required finding of not guilty, the SJC reviewed the evidence in a light most favorable to the Commonwealth, in compliance with the *Jackson* standard. Upon review of that evidence, the SJC affirmed the denial of Duguay's motion, stating that "[c]onflicting evidence is for the jury." *Id.* at 403, 720 N.E.2d 458. Duguay's presence in the area at the time of the crime, obsessive but spurned love for the victim, prior threats to kill and statements evincing consciousness of guilt provide ample evidence from which a reasonable trier of fact could identify Duguay as the killer beyond a reasonable doubt. The SJC, therefore, did not reach an objectively unreasonable decision to affirm the trial court's denial of Duguay's motion for a required finding as a matter of law.

■ In Ground Five, Duguay contends that his due process rights under the Fourteenth Amendment were violated by improper remarks made by the prosecutor during closing arguments. Duguay points to the following remarks which he alleges were improper:

1) the prosecutor's emphasis of the evidentiary significance of the ortho-tolidine test results;

2) the prosecutor's argument that the jury would have to conclude that all of the Commonwealth's witnesses had conspired to commit perjury in order to acquit Duguay;

3) the prosecutor's improper appeal to the jury's sympathy and passions with reference to the victim's wounds;

4) the prosecutor's factual argument about Duguay's observation of the victim's clothing that was not substantiated by the evidence;

5) the prosecutor's argument that people who commit the crime of murder go to prison for the rest of their lives.

Prosecutors must refrain from using improper methods calculated to produce a wrongful conviction. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Where, as here, a convict alleges that a prosecutor used improper comments to secure a conviction, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The Supreme Court has cautioned that, in making this determination, the courts must be careful to view the prosecutor's comments in the context of the entire proceeding. *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

At least one of the prosecutor's remarks in Duguay's case appears to have been improper. The prosecutor's reference to the punishment for the crime charged was prejudicial, and immediately provoked a *sua sponte* interruption from the trial judge, which ordered the remark stricken from the record.

█ It is not the function of the habeas court, however, to review the propriety of the prosecutor's remarks in the first instance. Rather, the habeas court may only review a constitutional claim that was "adjudicated on the merits" in state court proceedings. 28 U.S.C. § 2254(d). The primary focus of the habeas court is on the state court decision wherein the merits of the constitutional claim were adjudicated, not on the validity of the claim as presented by the petitioner. *Jackson v. Coalter,* 337 F.3d 74, 83 (1st Cir.2003). In the instant case, this Court is reviewing the decision reached by the SJC on Duguay's appeal. *Duguay,* 430 Mass. 397, 720 N.E.2d 458 (1999).

The Court cannot say that the SJC was unreasonable in affirming Duguay's conviction, despite the comments made by the prosecutor. The SJC reviewed each of the comments raised in Duguay's appeal. As to the comments regarding the ortho-tolidine tests, the victim's wounds, and Duguay's knowledge of the clothing of the victim, the SJC found that each of those comments was based on evidence presented at trial. With respect to the conspiracy theory proffered by the prosecutor, the SJC found that defense counsel had insinuated that a conspiracy existed against Duguay, and that the prosecutor's remarks were therefore a fair response. Finally, although it is clear error for the prosecutor to address the issue of punishment in a closing argument, the SJC determined that it was not prejudicial in this case because the trial judge immediately struck the statement. Further, the SJC presumed that the jury followed the judge's instructions and did not consider statements that were stricken from the record. *See Commonwealth v. Pope,* 406 Mass. 581, 588, 549 N.E.2d 1120 (1990). The SJC's decision was not contrary to, or an unreasonable application of, any Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Ground Five of Duguay's petition is therefore unavailing.

### 3. Grounds Six, Seven and Eight

Grounds Six, Seven, and Eight of Duguay's petition raise the issue of ineffective

assistance of both trial and appellate counsel relating to numerous alleged errors. Duguay argues that these errors constitute a violation of his Sixth Amendment right to effective counsel. The respondent does not address the merits of those claims, instead arguing that they are barred by procedural default. None of the claims was raised on direct appeal, although Duguay contends that his appellate counsel was ineffective for not raising them.

■ Federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state law ground. *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A petitioner's procedural default constitutes an independent and adequate state ground so long as the state consistently applies the rule and has not waived it. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In this case, respondent argues that Grounds Six, Seven and Eight of Duguay's petition are procedurally defaulted because 1) Duguay failed to raise them in his direct appeal before the SJC and 2) the decision of the Single Justice to deny Duguay's appeal of his new trial motions is an adequate and independent state law ground that precludes habeas corpus review.

### a. Procedural History

Additional procedural history is necessary to untangle the complex issue of procedural default. Duguay filed his first *pro se* motion for a new trial pursuant to Mass. R.Crim. P. 30(b) on May 4, 2000, raising for the first time allegations of trial counsel's ineffectiveness described in Ground Six. That motion was denied by the trial court on June 23, 2000, on the ground that Duguay had waived the claim of ineffective assistance of trial counsel by failing to raise that issue in his direct appeal, notwithstanding his fair opportunity to do so.

In July, 2000, Duguay filed an application for leave to appeal the denial of his motion for a new trial before a single justice of the SJC pursuant to the so-called "gatekeeper" provision of M.G.L. c. 278, § 33E. On May 31, 2001, Duguay filed a post-conviction motion seeking hair analysis and DNA testing of a rectal sample from the victim containing semen. Duguay appealed the denial of that motion in October, 2001, and filed a motion for reconsideration which was denied June 3, 2002.

On June 27, 2001, Duguay filed with the trial court a motion to reconsider denial of his previous 30(b) motion for new trial, raising the issue of ineffective assistance of appellate counsel for the first time. That motion was endorsed "denied" by the trial court on July 3, 2001. Duguay filed a second motion for reconsideration on September 4, 2001, contending that he had not waived the issue of trial counsel's ineffectiveness which related mainly to matters outside the record. Shortly thereafter, that motion was denied by the trial court.

In February, 2002, Duguay attempted to file a second motion for a new trial but the trial court would not accept the filing because his application for appeal of his first motion for a new trial was pending before the Single Justice.

On January 31, 2003, Duguay's new counsel filed a supplemental memorandum and appendix relating to the application for leave to file appeal of his first motion for a new trial with the Single Justice. The supplemental memorandum addressed the additional issues Duguay had raised after his initial 30(b) motion. On March 12, 2003, a hearing was held before Justice Ireland, sitting as the Single Justice, on the § 33E application for leave to appeal.

Justice Ireland denied petitioner's request the same day by ordering that:

> The defendant's application pursuant to G.L. c. 278, s. 33E, for leave to appeal from the denial of defendant's motion for a new trial, is denied.

Duguay moved to vacate that order on August 9, 2004, but his motion was denied, without a hearing, by the Single Justice.

### b. Standard of Review

Under Massachusetts law, a person convicted of first-degree murder has the right to an extremely broad plenary review on direct appeal before the SJC pursuant to M.G.L. c. 278, § 33E. If the conviction is affirmed, however, the convict may appeal the denial of subsequent motions for new trial only upon determination by a single justice of the SJC that the motion presents a question that is both "new" and "substantial." M.G.L. c. 278, § 33E. An issue is not "new" within the meaning of § 33E where it could have been addressed had the defendant properly raised it at trial or on direct review. *Commonwealth v. Ambers*, 397 Mass. 705, 707, 493 N.E.2d 837 (1986). Denial of leave to appeal by a single justice serving in this "gatekeeper" capacity is generally unreviewable. *Id.* at 711, 493 N.E.2d 837.

Under 28 U.S.C. § 2254(d), habeas review in federal court is available only as to a claim "adjudicated on the merits" in state court proceedings, and is foreclosed if the final state court decision rests on independent and adequate state grounds. *Phoenix v. Matesanz*, 189 F.3d 20, 24 (1st Cir.1999). Such independent and adequate grounds exist where the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement. *Id.* In the vernacular of habeas proceedings, this is known as "procedural default." *See Id.*

The rationale for the procedural default rule is that all federal law claims must be "exhausted" in state court before being presented to the federal habeas court. 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine is intended to afford the state courts a meaningful opportunity to consider all allegations of legal error without interference from the federal judiciary. *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). The federal habeas court may not review any claim unless it was "adjudicated on the merits" in state court proceedings. 28 U.S.C. § 2254(d).

The First Circuit Court of Appeals has determined that where a Massachusetts trial court has denied a motion for new trial under Mass. R.Crim. P. 30(b) for failure to follow procedural rules, denial of review by a single justice of the SJC under § 33E constitutes an independent and adequate state ground that bars federal habeas review. *Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir.1999). The First Circuit qualified its holding in *Simpson*, however, by stating that habeas review could be appropriate where the state trial court did not find procedural waiver, and where the gatekeeper justice's denial under § 33E was based on findings, supported by federal law, that the petitioner's claim was "new" but not "substantial". *Phoenix*, 189 F.3d at 25. If the last reasoned opinion of a state court was based, in some part, on the petitioner's federal constitutional claims, then habeas review by this Court is not precluded. *Id.*

### c. Analysis

Whether or not Grounds Six, Seven and Eight of Duguay's habeas petition are barred by procedural default turns on whether the facts of his case fit within the scope of *Simpson* or *Phoenix*.

■ In the instant case, Duguay's motion for a new trial was denied on proce-

dural grounds by the trial court on June 23, 2000. In his motion for a new trial, Duguay raised the issue of ineffective assistance of trial counsel for the first time. The trial judge explicitly stated in his June 23, 2000, Memorandum and Order that Duguay "waived his claim of ineffective assistance of trial counsel because he had a fair opportunity to raise the issue on appeal." The Single Justice of the SJC subsequently denied leave to appeal on March 12, 2003. Thus under *Simpson,* federal habeas review is barred as to the effectiveness of trial counsel unless Duguay can show that the decision of the Single Justice was not "clearly" based on procedural grounds, i.e., that the Single Justice addressed the substance on Duguay's claims. *Phoenix,* 189 F.3d at 25.

Duguay urges this Court to follow *Phoenix,* however, because the order of the Single Justice was so cursory and devoid of explanation that it was uncertain whether he applied the waiver rule or actually considered the merits of Duguay's constitutional claims thereby lifting any procedural bar to habeas corpus review. Furthermore, Duguay's argument that *appellate* counsel was ineffective was not raised until his motion for reconsideration which was denied without any findings.

The key factual issue is whether Justice Ireland, in his capacity as the gatekeeper reviewing Duguay's § 33E motion for leave to appeal denial of his motion for a new trial, based his decision on procedural grounds or whether he addressed the substance of Duguay's constitutional claims, particularly his claim for ineffective assistance of appellate counsel. Because Justice Ireland did not issue a memorandum to accompany his order denying the § 33E motion, it is impossible to discern the grounds upon which that order was based.

A review of the record *in toto,* however, reveals that Justice Ireland's decision was clearly based on procedural grounds. First and foremost, as in *Simpson,* Duguay's first motion for a new trial was explicitly denied on procedural grounds. Because Justice Ireland did not elaborate in his order denying leave to appeal that decision, he effectively affirmed the decision of the trial court, giving rise to an inference that he agreed with the reasoning of the trial court that Duguay's claims were procedurally barred, at least with respect to the alleged ineffective assistance of trial counsel.

Second, under *Phoenix,* habeas review is foreclosed unless the gatekeeper justice's denial of the § 33E motion was "based on findings, supported by federal law, that the petitioner's claim was new but not substantial." 189 F.3d at 25. In this case, Justice Ireland made no findings at all. Instead, he summarily denied Duguay's § 33E motion. Furthermore, it appears that no evidentiary hearing was held to consider the substance of Duguay's ineffective assistance argument. The record indicates only that a hearing was held before Justice Ireland on March 12, 2003, during which the arguments from counsel for Duguay and the Commonwealth were heard. The record suggests that this was not an evidentiary hearing, a conclusion supported by the fact that Justice Ireland entered his order on the same day without any findings of fact or law.

Third, the memoranda submitted by the parties prior to the March 12, 2003 hearing suggest that Justice Ireland's decision was based on procedural grounds. While Duguay's brief encompassed all of his arguments regarding ineffective assistance of both trial and appellate counsel, the Commonwealth's opposition focused on procedural waiver. It addressed the substance of Duguay's claims, but barely touched on the issue of ineffective assistance of appellate counsel. If Justice Ireland had con-

sidered Duguay's constitutional arguments, and if he had considered them "new" issues for the purposes of § 33E, one would expect some exposition on the topic within his order. There was none, and Justice Ireland denied Duguay's motion on the same day he heard oral argument.

For all of those reasons, the record indicates that Justice Ireland's order denying Duguay's § 33E motion was based on procedural grounds, and did not address the substance of Duguay's constitutional claims. This Court is therefore precluded from reviewing Duguay's argument as to the effectiveness of trial counsel under *Simpson.*

■ On the other hand, Duguay's claim of ineffective assistance of *appellate* counsel does not appear to have been adjudicated on the merits in the state courts, and therefore is not completely exhausted, as discussed more fully below. The first logical opportunity that Duguay had to present his claims relating to ineffective assistance of appellate counsel was in his first 30(b) motion for a new trial, and he did not do so. The issue was not properly before the Single Justice of the SJC when considering the § 33E motion and Duguay's subsequent motions to the trial court raising the issue were either denied without findings or were not accepted for filing. The next step in the analysis, therefore, is whether the alleged ineffective assistance of appellate counsel constitutes cause and prejudice for the default of his underlying claims in Grounds Six, Seven and Eight.

### d. Exceptions to Procedural Default Rule

Because the underlying claims in Grounds Six, Seven, and Eight of Duguay's petition are barred by procedural default, this Court lacks the authority to review them unless they fall into one of two exceptional categories. Duguay must demonstrate either "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### i. Cause and Prejudice

Under the first exception, Duguay must show that state counsel's failure to pursue his claims in a timely manner is the cause of his procedural default, and that he has suffered prejudice from that error. *Murray v. Carrier,* 477 U.S. 478, 487–88, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In this case, Duguay argues that the ineffective assistance of his *appellate* counsel was the cause of his failure to bring his claims of ineffective assistance of trial counsel on direct review. Such failure of appellate counsel may be deemed the "cause" of procedural default on other constitutional claims, including ineffective assistance of trial counsel. *See Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518; *Gunter v. Maloney,* 291 F.3d 74, 81–82 (1st Cir.2002).

■ When, however, a habeas petitioner claims ineffective assistance of counsel as an excuse for a state procedural default, that ineffective assistance claim itself must ordinarily be fairly presented to the state courts and exhausted. *Edwards,* 529 U.S. at 450–54, 120 S.Ct. 1587; *Gunter,* 291 F.3d at 81. As the First Circuit noted in *Gunter,* an ineffective assistance claim requires a great deal of factual development. 291 F.3d at 81. Without exhaustion requirements for ineffective assistance claims, federal habeas courts would routinely be required to hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question in order to determine whether there

was cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 487, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Gunter*, 291 F.3d at 81. The whole structure of 28 U.S.C. § 2254, as amended by AEDPA, is to afford state courts every opportunity to conduct that kind of investigation in the first instance. *Edwards*, 529 U.S. at 451–52, 120 S.Ct. 1587.

■ In this case, as discussed above, Duguay has not exhausted his claims for ineffective assistance of *appellate* counsel. As the First Circuit has stated, raising a claim for the first time to the state's highest court on discretionary review does not constitute "fair presentation for purposes of exhaustion." *Gunter*, 291 F.3d at 81.

As to those claims stated in Ground Six, Duguay first raised his argument that appellate counsel had been constitutionally ineffective in his motion for reconsideration of the denial of his first motion for a new trial.[2] By that time, his first motion for a new trial had already been denied, and he had filed for leave to appeal to the Single Justice under § 30E. The motion for reconsideration was simply endorsed "Denied" without 1) any showing that the judge addressed the merit of Duguay's appellate counsel argument, or 2) the entry of any findings of fact. The motion may have been denied simply because Duguay's motion for leave to appeal was pending before the SJC.

In any event, Duguay attempted to raise the ineffectiveness of appellate counsel argument again with the trial court by filing a second motion for a new trial in February, 2002, but the court refused to accept the pleadings because the appeal of his first motion for a new trial was pending before the SJC. Thus, the trial court never had an opportunity to consider fully Duguay's claim of ineffective assistance of appellate counsel.

In his supplemental memorandum of law in support of his § 33E motion, Duguay did brief the issue of ineffective assistance of appellate counsel before the Single Justice of the SJC. At that time, however, Duguay was appealing only the decision of the trial court denying his first motion for a new trial which did not address the appellate counsel issue. The Single Justice denied the § 33E motion without explanation, and without making any findings on the issue of appellate counsel. It cannot be said that Duguay "fairly presented" his claim of ineffective assistance of appellate counsel because it had not been raised in the original trial court motion and the issue was not properly before the Single Justice. *Gunter*, 291 F.3d at 82. The state courts did not have a full opportunity to deal with the claimed constitutional violation and develop the facts surrounding that claim. *Id.* Upon consideration of the record, therefore, the only conclusion that can be drawn is that Duguay's claims of ineffective assistance of *appellate* counsel have not been exhausted in state court.

Under 28 U.S.C. § 2254(d), this Court can review only those claims that have been "adjudicated on the merits" in state court. Under § 2254(c), a petitioner shall not be deemed to have exhausted his state court remedies if he has the right under the law of the state to raise the question presented by any available procedure. Despite the voluminous pleadings filed by Duguay in state court, there is apparently still a procedure Duguay could follow to raise his appellate counsel claims in state

---

**2.** The record indicates that Duguay raised an argument in that motion that there was a conflict of interest between trial and appellate counsel, an argument which involved a matter of state constitutional law—not the Sixth Amendment—and which the trial court rejected in a written memorandum dated June 23, 2000.

court: he could file yet another motion for a new trial under Mass. R. Crim. P. 30(b). That rule provides that:

The trial judge upon motion in writing may grant a new trial *at any time* if it appears that justice may not have been done. Upon motion the trial judge shall *make such findings of fact* as are necessary to resolve the defendant's allegations of error of law. (Emphasis added).

Because the state courts made no findings with respect to the alleged ineffectiveness of appellate counsel, this Court has nothing on which to base its analysis and therefore declines to consider the issue on the merits.

Despite this commentary, the Court deplores further, hopeless litigation. Under Mass. R.Crim. P. 30(c)(2), the trial judge has discretion to consider claims not raised in the original motion for a new trial but is not compelled to do so. The courts of the Commonwealth have thus far found little merit in Duguay's post-conviction motions and are unlikely to be persuaded otherwise.

It should also be noted that, even if these claims were again brought to federal court, the *Strickland v. Washington* test for evaluating the effectiveness of counsel for constitutional error imposes a very strict standard. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Courts must presume that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. If inadvertence of counsel, without more, were deemed to constitute sufficient cause, the cause requirement would be reduced to little more than a speed bump

on the road to a federal forum. *Burks v. Dubois*, 55 F.3d 712, 716–18 (1st Cir.1995). This decision should not, therefore, be read by Duguay with undue optimism.

■ Duguay's claims of ineffective assistance of appellate counsel in Ground Six will be dismissed without prejudice so that he can exhaust them in state court and potentially apply for a writ of habeas corpus again in the future without being subjected to the bar on successive petitions.[3]

The claim presented in Ground Seven is in a different procedural posture. Duguay contends that his trial counsel was ineffective for not pursuing DNA testing of certain physical evidence. That issue was not raised on direct appeal but was presented twice to the trial court in post-trial motions and was rejected twice on the merits. Arguments on that issue were then briefed before the Single Justice of the SJC. The federal issue is whether state counsel was ineffective for not pursuing such testing at trial and on direct appeal. As it relates to trial counsel, that issue is in procedural default. The only remaining question is whether failure of appellate counsel falls into the cause-and-prejudice exception.

■ That question is most easily disposed of on the prejudice prong. Duguay contends that it was error for his trial lawyer not to pursue DNA testing of certain physical evidence and for his appellate counsel not to raise the issue on appeal. The evidence at trial demonstrated that the physical evidence in question was not a genetic match with Duguay. Thus Duguay was already fully excluded as the source of that physical evidence at trial, and the lack of additional testing caused him no preju-

---

**3.** Pursuant to 28 U.S.C. § 2244(b)(1), claims presented in second or successive habeas applications shall be dismissed but this bar applies only when the claim was actually adjudicated on the merits, not when it was disposed of on some other basis, such as non-exhaustion. *Stewart v. Martinez–Villareal*, 523 U.S. 637, 644, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998).

dice. Ground Seven will therefore be dismissed.

In Ground Eight, Duguay challenges an additional jury instruction on manslaughter to which there was no objection at trial nor an issue raised on appeal. Duguay claims that the instruction is in a different procedural posture than the claim in Ground Six because it was not included in his first motion for a new trial and was not considered by the trial court in his subsequent motion for a new trial because his § 33E motion was pending at that time. Nevertheless, the issue was included in Duguay's memorandum filed with the Single Justice and therefore may be considered in procedural default as a result of the denial of the § 33E motion, as far as the effectiveness of trial counsel is concerned. As discussed above, however, whether there was constitutional error on the part of appellate counsel has not been exhausted nor adjudicated on the merits in state court. Ground Eight, therefore, will be dismissed without prejudice.

### ii. Miscarriage of Justice

 Even absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice. See *Murray*, 477 U.S. at 495–96, 106 S.Ct. 2639. This is a narrow exception to the cause-and-prejudice imperative, seldom applied, and explicitly tied to a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Simpson*, 175 F.3d at 210. To establish "actual innocence," petitioner must show that it is more likely than not that no reasonable jury would have found petitioner guilty beyond a reasonable doubt. *Simpson*, 175 F.3d at 210. Duguay has made no serious attempt to make

such a showing, and indeed, given the weight of the evidence against him at trial, would not be able to do so.

## V. *Petitioner's Other Motions*

### A. Motion to Amend

 Rule 11 of the Federal Rules Governing § 2254 Cases provides that the Federal Rules of Civil Procedure may be applied to a habeas corpus proceeding to the extent that they are "not inconsistent" with the habeas rules or any statutory provisions. Under Fed.R.Civ.P. 15, a party may amend a pleading after a response has been filed only by leave of court, and leave shall be freely given "when justice so requires." The petitioner in the instant case filed his motion to amend long after responsive pleadings were filed by the respondent and without first seeking leave to so file. The Court is left, therefore, to determine whether "justice so requires" that the petition should be amended.

Petitioner filed his motion to amend more than three years after the original petition was initiated and several months after the respondent filed a dispositive motion to dismiss the petition. Respondent contends that the motion to amend and other motions filed by petitioner represent his latest effort to delay review by this Court of the actual merits of his case and its ultimate resolution. As respondent aptly points out, the petitioner's state appeal was affirmed more than six years ago and he has had ample time to sift through the record and identify the issues to present for habeas review. Petitioner's motion to amend will therefore be viewed with a critical eye.

A substantive review of petitioner's motion to amend reveals that the amendments, in general, would have little, if any, effect on the outcome of his § 2254 peti-

tion. In particular, the Court finds as follows:

In Amendment No. 1, petitioner moves to dismiss Grounds One and Three and waives opposition to respondent's motion to dismiss those grounds. Grounds One and Three, therefore, will be dismissed without prejudice.

Amendment Nos. 2 through 4 purport to update the procedural history of petitioner's case with respect to actions taken in the courts of the Commonwealth. This Court has reviewed Duguay's claims in Grounds Six, Seven and Eight and determined that they are in procedural default on the basis of the record. Those amendments to the petition merely reflect the record and would not have any material effect on the Court's analysis.

In Amendment No. 5, petitioner seeks to revise Ground 6 of his petition to add numerous additional claims regarding ineffective assistance of trial counsel. Similarly, in Amendment Nos. 6 through 9 (inclusive), Duguay attempts to add new bases for ineffective assistance of trial counsel. Even if those claims were added to his petition, the Court's analysis with respect to procedural default would remain unchanged. All of the claims are in procedural default except to the extent that appellate counsel may have been ineffective for not having raised them on direct appeal. As discussed above, that issue has not been fully exhausted in state court. Proposed Amendment Nos. 5 through Nine would have no material effect on the Court's ruling and will not be allowed.

## B. Motion for DNA Testing/Analysis of Physical Evidence

This motion relates to Ground Seven of Duguay's habeas petition and seeks funding for additional DNA testing of physical evidence. Duguay has twice filed similar motions in state court and has been denied. Because this Court finds that Duguay's constitutional claim with respect to ineffective assistance of trial counsel is procedurally barred by his failure to raise that issue on direct appeal, and because failure by appellate counsel to do so caused him no prejudice, the Court will deny the motion.

## C. Motion for Expansion of the Record

In this motion Duguay seeks to have all of the exhibits that were entered into evidence at his murder trial added to the record in the instant habeas proceedings. He contends that the trial exhibits are relevant to the Court's analysis of Ground Four, whether the evidence at trial was sufficient to withstand a conviction as a matter of due process. The record is adequate for this Court to determine that the SJC did not commit constitutional error when it affirmed Duguay's conviction on the basis of sufficiency of the evidence. The motion will, therefore, be denied.

## D. Motion for an Evidentiary Hearing

In this motion Duguay requests an evidentiary hearing related to Grounds Six, Seven and Eight, his claims for ineffective assistance of counsel. As discussed above, the issue of the alleged ineffectiveness of Duguay's trial counsel is procedurally barred and will not be considered by the Court. With respect to Duguay's appellate counsel, the Court has the power to order evidentiary hearings under Rule 8(a) of the Rules Governing Section 2254 Habeas Corpus Cases but declines to do so because that issue has not been exhausted in state court wherein it would be more appropriate to make findings of fact relat-

ed to Duguay's claims in the first instance. This motion will therefore be denied.

## ORDER

Respondent's Motion to Dismiss (Docket No. 57) is **ALLOWED** and Duguay's petition for a writ of habeas corpus (Docket No. 1) is dismissed in the following manner:

Ground 1: **DISMISSED WITHOUT PREJUDICE;**

Ground 2: **DISMISSED WITH PREJUDICE;**

Ground 3: **DISMISSED WITHOUT PREJUDICE;**

Ground 4: **DISMISSED WITH PREJUDICE;**

Ground 5: **DISMISSED WITH PREJUDICE;**

Ground 6: **DISMISSED WITHOUT PREJUDICE;**

Ground 7: **DISMISSED WITH PREJUDICE;**

Ground 8: **DISMISSED WITHOUT PREJUDICE.**

Petitioner's Motion to Amend Petition for Writ of Habeas Corpus (Docket No. 68) is **DENIED;**

Petitioner's Motion for DNA Testing/Analysis of Physical Evidence (Docket No. 71) is **DENIED;**

Petitioner's Motion for Expansion of the Record (Docket No. 80) is **DENIED;** and

Petitioner's Motion for an Evidentiary Hearing (Docket No. 81) is **DENIED.**

**So ordered.**