**David JACKSON, Petitioner**

v.

**John MARSHALL, Respondent.**

**Civil Action No. 99–11837–WGY.**

United States District Court,
D. Massachusetts.

June 18, 2009.

James J. Arguin, Susanne G. Reardon, Office of the Attorney General, Boston, MA, for Respondent.

Jeanne M. Kempthorne, Law Office of Jeanne M. Kempthorne, Salem, MA, Mark L. Stevens, Law Office of Mark Steves, Salem, NH, for Petitioner.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Petitioner David Jackson ("Jackson") brings a petition asking the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking reversal of his convictions in the Massachusetts Superior Court sitting in and for the County of Suffolk of murder in the first degree, armed robbery, and burglary. He contends that he was deprived of his federal constitutional right to due process when the Commonwealth failed to disclose material promises, rewards, and inducements made to its key witness, Stephen Olbinsky ("Olbinsky"); when the state prosecutor elicited and failed to correct Olbinsky's testimony that he had received no promises or inducements; and when the prosecutor improperly vouched for Olbinsky's credibility.[1]

As described in an earlier ruling by this Court, Olbinsky testified at Jackson's trial that he was present on the night of the crime, traveled with Jackson to the location of the crime (to complete a drug purchase), and witnessed Jackson load a weapon before entering the location. *See* July 24, 2007 Memorandum and Order ("July 2007 Order") [Doc. No. 78] at 2. At the time of trial, Jackson's counsel attempted to impeach Olbinsky in the following ways: 1) by eliciting testimony from Olbinsky on cross-examination that he (Olbinsky) also faced murder charges for the same killing, 2) by cross-examining Olbinsky about his earlier statements to the police in a manner that revealed minor inconsistencies between what Olbinsky testified he had said and what the police reports indicated, and 3) by getting Olbin-

sky to acknowledge that at the time Olbinsky first made statements to the police in July 1990, he faced pending charges of, inter alia, larceny, assault and battery, and breaking and entering in the daytime. Jackson also sought to introduce evidence of pending charges against Olbinsky on a drug case in Oregon, which the judge excluded on the ground that Olbinsky's testimony at trial had not deviated from those statements "in any substantial and material way." Trial Tr. vol. 2, 139. *See Commonwealth v. Haywood,* 377 Mass. 755, 388 N.E.2d 648 (1979). In his closing argument, Jackson's counsel focused on the murder charge, arguing that Olbinsky was testifying to "save his own neck." Trial Tr. vol. 5, 40. He asked the jurors to use their "common sense" and argued that Olbinsky "would do anything, absolutely anything to please the government and convict [Jackson]." Trial Tr. vol. 5, 37.

Jackson now argues, pointing to information about Olbinsky's Massachusetts murder case and Oregon drug case that he has gathered since the trial, that the Court should grant a writ of habeas corpus because the new information supports Jackson's initial hunch that Olbinsky was induced to testify against him. What Jackson has learned and when he learned it is set forth below. First, a timeline of the events after the murder as now supported by the record.

The murder occurred in April 1990. Three months later, in July 1990, Olbinsky gave two separate statements to the police that were consistent with his later trial testimony. *See Commonwealth v. Jackson,* No. SJ–2003–0065, slip op. at 2 n.1 (Mass. Oct. 23, 2003) (Sosman, J.) ("Single Justice Order") [Doc 64–2]. The next month, Olbinsky left Massachusetts and

---

1. During closing, the prosecutor argued: "I've got the case and if he [Olbinsky] got a deal, you would have known about it. Let me repeat that. You would have known about it." Trial Tr. vol. 5, 50.

went to Oregon because, he later testified, he was "scared." Trial Tr. vol. 2, 76.

On March 13, 1992, Jackson and Olbinsky both were indicted for murder in the first degree and warrants were issued for their arrest. Ten days later, Oregon police arrested Olbinsky at his Oregon residence pursuant to the Massachusetts warrant. At the same time, as a result of an unrelated drug investigation, they executed a search warrant on his residence and found methamphetamine.

Olbinsky was extradited by Massachusetts and arraigned here on the murder charge on April 13, 1992. Bail initially was set at $25,000 cash, but was reduced to $5,000 after a hearing on June 2, 1992. The positions taken by the parties at that hearing are not in the record here. Olbinsky satisfied bail that day and was ordered to report in person weekly to the probation department.

Shortly thereafter, on June 23, 1992, Olbinsky was indicted in Oregon for possession and delivery of methamphetamine and an arrest warrant issued. That same day, in Massachusetts, Olbinsky and the Suffolk County District Attorney entered into a bail agreement providing that Olbinsky would wear an electronic monitor as a condition of his release on bail. *See* Broker Deposition Exhibit 6 [Doc. No. 85]. Also that day, Olbinsky filed a motion to dismiss his murder indictment for lack of evidence.

Three days later, at the request of an assistant district attorney in Suffolk County, an Oregon district attorney requested that Olbinsky's Oregon arrest warrant be recalled. The Oregon district attorney file notes explain: "[e]vidently we're trying to work w[ith] prosecutors in Boston to treat this [defendant] nicely, as he's a material

witness in a murder case there." Oregon's Response to Olbinsky's Motion to Dismiss [Doc. No. 74] at 5. Were the Oregon warrant not lifted, Olbinsky could not have been released on bail pending his Massachusetts trial.

Jackson was convicted of murder on April 16, 1993, based in part on Olbinsky's testimony. Prosecutor James Coffey ("Coffey") tried the case, after receiving the assignment approximately three weeks earlier.[2] Coffey Deposition [Doc. No. 82 Attach. 2] at 11. Approximately two weeks after Jackson's conviction, on April 30, 1993, Olbinsky's unopposed motion to dismiss his Massachusetts indictment was allowed. Olbinsky later pled guilty to the Oregon drug charge.

Jackson now argues, pointing to the Oregon district attorney file notes and related materials in that case, that in exchange for Olbinsky's promise to testify against Jackson, the Suffolk County District Attorney's office asked Oregon to lift its warrant so that Olbinsky could remain out on bail pending trial and that it later encouraged Oregon authorities to treat Olbinsky leniently in light of his cooperation. *See* Petitioner's Memorandum in Support of Petition for Habeas Corpus ("Jackson Mem.") [Doc. No. 83] at 26. He further contends that the Commonwealth "reached an understanding with Olbinsky, through his counsel, that he was not a genuine defendant facing first degree murder charges, but rather was merely a material witness for the prosecution." Jackson Mem. at 26. In support, Jackson has submitted an affidavit from his counsel, Jeanne Kempthorne, in which she describes a conversation she had on March 5, 2007, with the attorney defending Olbinsky on the murder charge, John Ruby ("Ruby"). Kempthorne avers that Ruby

---

**2.** A different prosecutor, Phyllis Broker ("Broker"), had obtained the indictments and entered into the June 23, 1992 bail agreement.

told her it was his understanding that Olbinsky was never anything more than a material witness and that the prosecutor had charged Olbinsky with murder in the first degree because he did not believe that out-of-state authorities would pay attention to a material witness warrant. *See* Kempthorne Affidavit [Doc. No. 72] at ¶ 7.

The procedural history of this case is lengthy and was described in detail in the July 2007 Order. *See* July 2007 Order at 1–7. A truncated version follows. After Jackson was convicted and Olbinsky's indictment was dismissed, Jackson moved for a new trial, arguing that the Commonwealth had never intended to prosecute Olbinsky and that it had induced his (Olbinsky's) testimony. The motion judge found, without taking evidence, that the Commonwealth did not offer Olbinsky any inducement for his testimony. *Commonwealth v. Jackson*, 428 Mass. 455, 458, 702 N.E.2d 1158 (1998). On December 10, 1998, the Massachusetts Supreme Judicial Court affirmed Jackson's convictions and the denial of his motion for a new trial. *Id.* The court concluded that the circumstances relied upon by Jackson to show inducement (the continuances of Olbinsky's case, his release on bail, and the Commonwealth's failure to oppose his motion to dismiss) were "insufficient to overturn the judge's finding that the Commonwealth did not offer [Olbinsky] any inducement for his testimony." *Id.* As to Jackson's claim that the prosecutor concealed from the jury the fact that the Commonwealth did not intend to prosecute Olbinsky, the court concluded that the "concealment, even if proved, would not have served to bolster [Olbinsky's] testimony." *Id.* at 459, 702 N.E.2d 1158. Rather, the court concluded, "[h]ad the prosecutor revealed that Olbinksky was no longer in danger of being tried for this crime and that he knew it, that would have done far more for Olbinsky's credibility than did the silence to which [Jackson] now objects." *Id.*

On September 24, 1999, Jackson filed a petition for habeas corpus, raising, inter alia, the prosecutor's remarks that no promises or inducements had been made to Olbinsky in exchange for his testimony. [Doc. No. 4]. He also requested an evidentiary hearing to determine whether Olbinsky received any promises or inducements. *Id.* The case was randomly drawn to Judge Keeton, who, by Memorandum and Order dated August 7, 2001, concluded that Jackson was not entitled to an evidentiary hearing because the facts underlying his inducement claim were fully developed in the state court proceedings. [Doc. No. 23] at 11. Judge Keeton also denied Jackson's petition on the merits. *Id.* at 36. With respect to the inducement claim, Judge Keeton emphasized that the state courts explicitly found that no promises or inducements were made, as a result of which he concluded that "the prosecutor's remarks could not have deprived petitioner of a fair trial." *Id.* at 11–12.

Having been denied an evidentiary hearing, Jackson sought information from the Suffolk County District Attorney pursuant to a public records request. July 2007 Order at 4–5. On July 2, 2002, the District Attorney produced the June 23, 1992 bail agreement between Broker, Olbinsky, and Ruby, which provided that Olbinsky would be released on condition of electronic monitoring. *See* Pet.'s Suppl. Mem. in Supp. of Discovery and Evid. Hr'g [Doc. 71] at 3–4; Mot. for Clarification and Recons. [Doc. 41] ("Mot. For Recons."), Ex. D.

With this new information, Jackson then filed a second motion for a new trial in the Superior Court, claiming that he was denied due process because the prosecution never disclosed the agreement. July 2007 Order at 5. After Jackson's motion was denied without a hearing in January 2003,

a "gatekeeper" single justice of the Supreme Judicial Court denied his request for leave to appeal. *See* Single Justice Order at 7. The single justice concluded that the bail agreement was "readily discoverable at the time of [Jackson's] trial." She further concluded that, in the absence of information about why Olbinsky's bail was reduced from $25,000 to $5,000 and what position the prosecutor took with respect to that reduction, the agreement alone did not prove that the Commonwealth "agreed" to Olbinsky's release. *Id.* at 5. According to the single justice, "[f]or all one can tell, that agreement for electronic monitoring may simply have been an agreed-upon substitute for weekly reporting to probation, or an agreement to keep closer track of Olbinsky in the wake of some failure to comply with the reporting requirement." *Id.* at 4. The single justice concluded that the terms of the agreement did not qualify as an inducement to testify, noting the absence of evidence that the prosecutor retained any ability to obtain revocation of Olbinsky's bail, absent a violation of the terms of release, at the time of Jackson's trial. Because the agreement was not new and not substantial, the single justice denied Jackson's petition for leave to appeal the denial of his second motion for a new trial.

Having received no relief in the state courts, Jackson continued his search for evidence of inducements. Sometime in early 2005, Jackson contacted the circuit court of Oregon and obtained copies of filings in Olbinsky's drug case, including briefs on his motion to dismiss the drug charges due to excessive delay. *See* Supplement to Response to Opposition to Motion for relief from Judgement [Doc. 49–1] at 3. Attached to the state's opposition to Olbinsky's motion were the notes in Olbinsky's Oregon district attorney file explaining, as discussed above, that the Oregon prosecutor had requested that the Oregon

arrest warrant be lifted because it was "trying to work w[ith] prosecutors in Boston." Citing these notes, Jackson returned to Judge Keeton and filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. On October 3, 2005, Judge Keeton allowed the motion and reopened the habeas case.

Jackson then moved for an evidentiary hearing on the inducement issue. When Judge Keeton retired from the bench before ruling on the motion, the case was redrawn to this session. This Court initially denied the motion, but subsequently allowed Jackson's motion for reconsideration and ordered further briefing. In his supplemental memorandum in support, Jackson brought forth two new pieces of information pertaining to the charges against Olbinsky. *See* Petitioner's Supplemental Memorandum in Support of Discovery and Evidentiary Hearing [Doc. No. 71]. First, he submitted an audiotape of Olbinsky's May 1996 sentencing hearing in Oregon at which the Oregon prosecutor stated that his office recalled its warrant at the request of Massachusetts prosecutors, and Olbinsky's attorney represented to the court that he had learned from Ruby that the murder charge was a sham and a tool to get Olbinsky back to Massachusetts to testify. Kempthorne Affidavit [Doc. No. 72]. Second, he submitted the Kempthorne affidavit setting forth Ruby's corroboration of those statements. *See* Kempthorne Affidavit ¶ 6.

After reviewing the submissions, this Court, on July 24, 2007, denied the motion for an evidentiary hearing, concluding that Jackson did not exercise due diligence in developing his claim in state court. *See* July 2007 Order. Citing Rule 6(a) of the Habeas Rules, however, the Court ordered the Respondent to produce all evidence of promises, rewards, or in-

ducements given to Olbinsky, including all actions taken in connection with charges he faced in Oregon. July 2007 Order at 11. When Jackson moved for additional discovery on October 5, 2007, this Court allowed the motion "to the extent of permitting one seven hour deposition each of Broker and Coffey and the grand jury minutes pertaining to the prosecution of Olbinsky."

The additional discovery ordered by this Court in July 2007 availed Jackson, in his words, "little if anything more than what [he] learned through independent means." Jackson Mem. at 15. Broker had only a "vague memory" of the case, and could not explain how Olbinsky came to be released on bail[3] or why the Commonwealth did not oppose his motion to dismiss the indictment against him. Broker Deposition [Doc. No. 82 Attach. 1] at 7, 15–16. She did not recall asking the Oregon authorities to treat Olbinsky "nicely," nor whether she had intended to prosecute Olbinsky for murder when she obtained the warrant for his arrest. *Id.* at 13, 18.

The deposition of Coffey similarly was unavailing. He testified that he was unaware that Massachusetts prosecutors had asked the Oregon authorities to treat Olbinsky "nicely," and could not remember how Olbinsky "ended up in court," i.e., whether he (Coffey) first spoke with attorney Ruby to confirm that Olbinsky would not assert his Fifth Amendment rights before the jury. Coffey Deposition [Doc. No. 82 Attach. 2] at 13–15. When asked what steps he had taken to ascertain that Olbinsky received no promises for his testimony, Coffey testified that he would have spoken with the two prosecutors previous-

ly assigned to the case. *Id.* at 31. He testified that he never intervened for Olbinsky in Oregon, *id.* at 22, and could not recall why in response to Olbinsky's motion to dismiss the indictment, he rested on the grand jury minutes and took "no position." *Id.* at 29; *see also* Olbinsky Motion to Dismiss Hear'g Tr. 1–5:4–24, Apr. 30, 1993 [Doc. No. 77] at 2.

Following the depositions of Broker and Coffey, Jackson, on January 24, 2008, renewed his motion for an evidentiary hearing, submitting the transcripts of the depositions.[4] *See* Petitioner's Status Report and Request for Hearing [Doc. No. 82]. This Court denied the motion on January 25, 2008. On April 24, 2008, Jackson filed the instant memorandum seeking habeas relief and reconsideration of the denial of his request for an evidentiary hearing. [Doc. No. 83]. The Respondent submitted a memorandum in opposition on May 28, 2008 ("Resp.Opp'n") [Doc. No. 87], to which Jackson replied on June 13, 2008 ("Jackson Reply") [Doc. No. 90].

## II. ANALYSIS

### A. Request for Habeas Corpus Relief

It is well established that when a state suppresses evidence favorable to an accused that is material to his guilt or punishment, the state violates the defendant's right to due process "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Jackson alleges that the Commonwealth violated his *Brady* rights when it failed to disclose that it had induced Olbinsky's testimony by: 1) intervening in his Oregon

---

**3.** Broker testified that she could not recall a case in which she had agreed to release someone on the condition of electronic monitoring who had been charged with murder in the first degree, was facing charges in another

state, and had left the Commonwealth after the homicide. Broker Deposition at 17.

**4.** The Commonwealth was unable to locate the grand jury minutes.

case, 2) arranging for his release on bail, and 3) treating him as a material witness rather than a murder defendant and acquiescing in the dismissal of the murder charges against him. He further contends that the prosecutor failed to correct Olbinsky's false testimony (that he had received no promises or inducements), *see Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and improperly vouched for Olbinsky's credibility in both his opening statement and closing argument.

As the Supreme Court explained in *Rhines v. Weber,* 544 U.S. 269, 273, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), it has long been settled that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." While the rule is well-established, the process for managing and analyzing mixed petitions has changed significantly over time. Pursuant to *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which was decided fourteen years before Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, district courts were required to dismiss mixed petitions. After the enactment of AEDPA and the imposition of its one-year deadline for filing a habeas petition, the circuit courts adopted a "stay and abeyance" procedure, whereby rather than dismissing a mixed petition, a district court could stay the petition and hold it in abeyance while the petitioner returned to state court to exhaust any unexhausted claims. 544 U.S. at 275, 125 S.Ct. 1528. As the Supreme Court explained in *Rhines,* this procedure addressed a problem resulting from "the interplay between AEDPA's 1–year statute of limitations and *Lundy's* dismissal requirement"—that "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.*

In *Rhines,* the Supreme Court reviewed a ruling by the Eighth Circuit Court of Appeals that the stay and abeyance procedure was always impermissible. *Id.* at 279, 125 S.Ct. 1528. The Supreme Court vacated that decision, noting that district courts ordinarily have authority to issue stays and that AEDPA did not deprive them of that authority but rather circumscribed their discretion. *Id.* at 276, 125 S.Ct. 1528. Therefore, the Supreme Court concluded, the stay and abeyance procedure should be available only in "limited circumstances" so as not to undermine the twin purposes of AEDPA: encouraging finality and streamlining federal habeas proceedings. *Id.* at 277, 125 S.Ct. 1528. Those limited circumstances include situations where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278, 125 S.Ct. 1528.

Pursuant to *Rhines* and *Lundy,* this Court must determine whether any of the claims are unexhausted, i.e., whether Jackson's petition is mixed, and if so, whether the stay and abeyance procedure is appropriate.

1. Claim pertaining to the Oregon drug charge

■ In response to Jackson's claim that he was deprived of his right to due process when the Commonwealth failed to disclose its interventions in Olbinsky's Oregon case, the Respondent contends that "the state courts have not had an opportunity to consider the issue in relation to this factual basis and it is unexhausted." Marshall Opp'n at 15. *See* 28 U.S.C. § 2254(b)(1)(A). The Court is persuaded.

As this Court has explained, "[t]he exhaustion requirement is not satisfied if a petitioner presents new factual allegations in federal court that transform a previous claim or cast it in a significantly different light." *Gaskins v. Duval*, 89 F.Supp.2d 139, 142 (D.Mass.2000) (concluding that petitioner failed to exhaust state remedies where legal theory presented in federal court was same but evidence was different); *see also Turner v. Fair*, 617 F.2d 7, 11 (1st Cir.1980) (concluding that habeas petition must be dismissed because the theory upon which alleged sixth amendment violation was premised had undergone "material alteration" since presentation to state court). In *Gaskins*, a petitioner sought habeas relief on the theory that the prosecutor trying his case had used perjured testimony, and supported his argument with an affidavit from a witness recanting his testimony and claiming coercion on the part of the prosecutor. 89 F.Supp.2d at 141–42. While the petitioner previously had raised the perjury claim in a motion for a new trial in state court, he had not submitted the affidavit and had relied only on a prior inconsistent statement by the witness. *Id.* This Court ruled that the claim was unexhausted, concluding that the petitioner had not presented the substance of his claim to the state courts. *Id.* at 142.

Here, as in *Gaskins*, Jackson has submitted additional evidence (the file notes, briefs, and tape recordings from the Oregon drug case) that transforms Jackson's claim of prosecutorial misconduct into a materially broader claim than originally was presented in the courts of the Commonwealth. Moreover, as in *Gaskins*, Rule 30 of the Massachusetts Rules of Criminal Procedure permits Jackson to raise this issue at the state level. *See Gray v. Netherland*, 518 U.S. 152, 161–62, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (holding that unexhausted claim not proce-

durally defaulted unless further resort to state law would be futile and state law would procedurally bar claim). This Court rejects Jackson's contention that "given the state courts' demonstrated unwillingness to hold any sort of hearing on Jackson's claims to date, filing yet another motion for new trial would be an exercise in futility." Jackson Reply at 9–10. While this Court expresses no opinion on the merits of Jackson's claim, it has no doubt that the courts of the Commonwealth will discharge their duties faithfully.

Jackson, however, contends that he need not return to state court because the "precise scope and nature of the deals and tacit understandings between the Commonwealth and Olbinsky do not change the essential nature of Jackson's claim." Jackson Reply at 8. In his words, "[e]ither the Commonwealth had a deal with Olbinsky or it did not" and the precise nature of the deal does not change the "essential nature" of the *Brady* claim. *Id.* at 8–9. Jackson compares his case to *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), where the Supreme Court concluded it was not error for a federal habeas judge to request and consider new evidence not presented to the state court. There, the habeas petitioner argued in state and federal court that he had been deprived of his right to equal protection by the systematic exclusion of African Americans from the grand jury in his county. *Vasquez*, 474 U.S. at 255–56, 106 S.Ct. 617. Pursuant to Rule 7(b) of the Habeas Corpus Rules, the district court judge requested more information from the parties, including statistical analysis of the likelihood that chance or accident accounted for the exclusion. *Id.* at 257, 106 S.Ct. 617. After reviewing the new evidence, the district court judge concluded that the prisoner had established discrimination in the grand jury, and

granted the writ. *Id.* at 256, 106 S.Ct. 617. In the Supreme Court, the government argued that the prisoner had circumvented his obligation to exhaust state remedies before seeking collateral relief in federal court. The Supreme Court disagreed, explaining that the statistical estimates "added nothing to the case that this Court has not considered intrinsic to the consideration of any grand jury discrimination claim" and that because the judge could have relied on "educated conjecture" about the exclusion of black people from the grand jury, he rightly considered the more sophisticated statistical information. *Id.* at 259–60, 106 S.Ct. 617.

Jackson argues that here, as in *Vasquez,* the supplemental evidence presented "did not fundamentally alter the legal claim already considered by the state courts." *Id.* at 260, 106 S.Ct. 617. The evidence of the Commonwealth's intervention in Olbinsky's Oregon charges, however, is more akin to the affidavit in *Gaskins* than to the statistical analyses considered by the judge in *Vasquez:* it was not "intrinsic" to the state court's consideration of the inducement claim and therefore must be presented to that court. *See Smith v. Quarterman,* 515 F.3d 392, 400–03 (5th Cir.2008) (concluding that ineffective assistance of counsel claim was not exhausted because, in part, petitioner "changed the focus of his federal claim to substantive areas not previously raised in the state courts"); *Gagne v. Fair,* 835 F.2d 6, 9 (1st Cir.1987) (concluding that claim of unfair trial was not exhausted where challenge in state court was based solely on prosecutor's vouching for credibility of witness, while habeas corpus petition claimed that such comment violated his constitutional rights in light of other comments and entire proceedings).

True, the non-exhaustion ruling by this Court is somewhat undercut by *Banks v. Dretke,* 540 U.S. 668, 690, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), where the Supreme Court ruled a claim exhausted since the legal issue had been raised in state post-conviction proceedings even though evidentiary support had not then been forthcoming. Nevertheless, a due respect for the courts of the Commonwealth convinces this Court that this claim should be presented to them.

2. Claim pertaining to Massachusetts bail agreement

a. Procedural default

 Jackson's bail agreement claim stands in a different posture: while there is no question but that it is exhausted, the Respondent argues that the claim is procedurally defaulted and should not be considered on the merits. Resp. Opp'n at 5. As the Supreme Court recently explained, "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell,* No. 07–1114, 2009 WL 1118709, at *9 (April 28, 2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). For example, "[w]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* The independent and adequate state ground doctrine is "designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases." [5] *Id.* (internal quotation omitted).

5. Because this claim is exhausted, and the claim pertaining to the Oregon drug charge

Jackson did not raise his challenge pertaining to the bail agreement until his second motion for a new trial, which was denied on January 7, 2003 without a hearing and without any detailed explanation. *See* Jackson docket [Doc. No. 43] at App. 8. Jackson's Superior Court docket merely records: "Motion (P# 33) [pro se motion for a new trial] denied without a hearing. The matter regarding witness oblinsky [sic] and judgement was affirmed. Spurlock, RAJ." *Id.* Jackson sought relief from that denial from a gatekeeper single justice of the Massachusetts Supreme Judicial Court pursuant to Massachusetts General Laws chapter 278, section 33E, which provides, in relevant part: "If any motion [for a new trial] is filed in the superior court after rescript [by the supreme judicial court], no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." The single justice denied Jackson's request, concluding that the issue was not new[6] or substantial. This decision was final and not reviewable. *Commonwealth v. Ambers,* 397 Mass. 705, 493 N.E.2d 837 (1986).

Jackson does not dispute that the waiver provision of section 33E is consistently applied in Massachusetts. Instead, relying on *Phoenix v. Matesanz,* 189 F.3d 20, 25–26 (1st Cir.1999), he contends that the single justice's denial of leave to appeal was a ruling on the merits and therefore is not a procedural bar. Jackson Reply at 3. Because state courts need not expressly state whether a claim is procedurally defaulted, this Court must examine the opinion of the single justice to determine whether it rests on procedural grounds. *See Coleman,* 501 U.S. at 739, 111 S.Ct. 2546.

■ The Court first rejects the Respondent's overly broad claim that "[a] gatekeeper justice's denial of a petitioner's application for leave to appeal is a finding by the [Supreme Judicial Court] of procedural default on the part of the petitioner and, as such, is a 'classic example of an independent and adequate state ground.'" Resp. Opp'n at 7. The First Circuit has denounced this view, explaining that habeas review of a gatekeeper's denial is appropriate in some cases. *Phoenix,* 189 F.3d at 24–25. The test is whether the state court decision "rests, expressly or inferentially, on a state-law procedural waiver (or some other state law consideration), or whether,

---

is not, Jackson's petition is mixed. This Court will address the procedural default requirement at this time, however, because the requirement falls within the "general prerequisites for federal habeas corpus which are unrelated to the merits of the particular claim." *Lambrix v. Singletary,* 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). *See also* 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice & Procedure § 26.1 & n.29 (5th ed. 2005) ("A post-*Coleman* dictum by the [Supreme] Court ... requires lower federal courts ordinarily to resolve procedural default claims made by the State 'first,' at the same time as other jurisdictional defenses are resolved and before certain nonjurisdictional but 'threshold' defenses are addressed and before the merits are decided").

6. *Commonwealth v. Ambers,* 397 Mass. 705, 493 N.E.2d 837 (1986), sets forth the test for whether an issue is "new":

> An issue is not "new" within the meaning of G.L. c. 278, § 33E, where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review. The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal.

*Id.* at 707, 493 N.E.2d 837 (internal quotation marks omitted).

instead, it involves the resolution of the merits of [petitioner's] federal constitutional claim." *Id.* at 25.

In *Phoenix*, the First Circuit concluded that a single justice's denial of a gatekeeper petition did not constitute a procedural bar to habeas review. *Id.* at 24–25. There, a petitioner sought a new trial after his conviction was affirmed on direct appeal, arguing that he had been deprived of his right to effective assistance of counsel in part because trial counsel had failed to call an expert to refute the Commonwealth's expert. *Id.* at 22–23. While he never raised the ineffective assistance of counsel argument on direct appeal, he sought leave to supplement the record on appeal with an affidavit from the expert challenging the Commonwealth's evidence. *Id.* The Supreme Judicial Court denied that request and affirmed the conviction. *Id.* at 23. When the petitioner submitted the affidavit again with his motion for a new trial, raising the ineffective assistance claim, the motion judge concluded that the petitioner had waived the issue by failing to raise it on appeal or in his first motion for a new trial. *Id.* Upon the petitioner's request for leave to appeal that ruling, a single justice determined that the issue of whether petitioner had waived his argument regarding the affidavit "may be novel," but that the underlying issue of ineffective assistance lacked substance. *Id.* The First Circuit concluded that the single justice's opinion was not based on procedural grounds, noting that the gatekeeper expressly determined that the ineffective assistance claim lacked substance, *id.* at 26, and distinguishing cases where a single justice found a procedural default but then briefly reviewed the merits to determine the state law question of whether there was a "substantial risk of a miscarriage of justice." *Id.* at 25 n. 2.

Jackson relies heavily on *Phoenix*, arguing that his claims in state court "were not resolved on the basis of a state procedural bar, nor were they clearly resolved on the basis of state law." Jackson Reply at 4. He contends that "[n]ot a single word in the memorandum of decision suggests or even hints at procedural default below." *Id.* at 4–5.

This case is complicated by the fact that the Superior Court judge who denied Jackson's second motion for a new trial did not explain his decision. Jackson's docket records only that "[t]he matter regarding witness oblinsky [sic] and judgement was affirmed." While this may have been a determination by the judge that the issue was decided on Jackson's direct appeal and, having already been raised and denied, could not be raised again, *see Commonwealth v. Rodriguez*, 443 Mass. 707, 710–11, 823 N.E.2d 1256 (2005), it is not explicit. On the other hand, there is no indication that the judge found procedural waiver, as Jackson rightly points out. Jackson Reply at 5. Therefore, this is not a case where a "denial of review under § 33E is an independent and adequate state ground 'where there has been procedural waiver below.'" *Phoenix*, 189 F.3d at 25 (quoting *Simpson v. Matesanz*, 175 F.3d 200, 206–07 (1st Cir.1999)).

Jackson argues that habeas review is appropriate in this case because the single justice conducted an inquiry into whether the claim was substantial, and thus considered its merits. Were this Court required to decide the case on that basis, it would be a close call. The single justice concluded that there was insufficient evidence that the Commonwealth "agreed" to the release of Olbinsky, and further concluded that the terms of the agreement did not qualify as an inducement. Single Justice Order at 4. As in *Phoenix*, the single justice's opinion "was fairly detailed" and "did not express-

ly invoke a 'miscarriage of justice standard under Massachusetts law.'" *Phoenix*, 189 F.3d at 25 n. 2. Furthermore, the fact that the single justice opinion cited neither federal nor state law is not dispositive, as the same was true in *Phoenix*. *Id.* at 23.

The crucial distinction, however, is that unlike *Phoenix*, here the single justice concluded that the issue of the bail agreement was not "new." Recognizing this difference, Jackson argues that "analytically it cannot matter whether the claim was new." Jackson Reply at 5. That argument misses the mark. In *Phoenix*, the First Circuit emphasized that the single justice "specifically indicated that he was not dismissing Phoenix's ineffective assistance claim on the ground of lack of novelty or on some other theory compatible with waiver." 189 F.3d at 26. Here, however, the gatekeeper justice explicitly stated that Jackson's claim was not new—a theory that is compatible with waiver. *See Olszewski v. Spencer*, 369 F.Supp.2d 113, 134 & n. 9 (D.Mass.2005) (Gorton, J.) (ruling that habeas review was barred where single justice determined that claim was not new and made only "limited review" of merits of claim). Moreover, *Phoenix* discussed at length an earlier case, *Simpson v. Matesanz*, 175 F.3d 200 (1st Cir.1999), explaining that the court there had determined that "hypothetically, habeas review could be appropriate where a gatekeeper justice's denial under § 33E was based on findings, supported by federal law, that the petitioner's claim was *new but not substantial.*" *Phoenix*, 189 F.3d at 25 (emphasis added). In *Simpson*, a state trial court denied a prisoner's motion for a new trial on waiver grounds, and a single justice denied the prisoner's petition as not new or substantial. *Simpson*, 175 F.3d at 206. The First Circuit ruled that the gatekeeper justice's conclusion that the claims were not "new" under Massachusetts law was "a finding by the SJC of

procedural default on the part of the petitioner." *Id.* at 207.

This Court therefore concludes that Jackson's claim is in procedural default and that federal habeas review is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

### b. Cause for the default

■■ "In order to establish cause for the default, petitioner must demonstrate that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule." *Olszewski*, 369 F.Supp.2d at 134 (internal quotation omitted). Here the external factor relied on by Jackson is the prosecutor: "[i]n the face of the prosecution's express representations that there was no deal, it was not incumbent on the defense to investigate." Jackson Reply at 7.

There is no question but that "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable would constitute cause." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Jackson compares this case to *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), where the Supreme Court ruled that a petitioner established cause for failure to raise a *Brady* claim prior to federal habeas review where the prosecution withheld exculpatory evidence (documents impeaching eyewitness testimony), the petitioner reasonably relied on the prosecution's open file policy, and the state asserted during state post-conviction proceedings that the petitioner al-

ready had received all exculpatory evidence known to the government. *Id.* The court stopped short of determining whether any one or two of the factors would be sufficient, as the combination "surely suffice[d]." *Id.*

This case is distinct in several respects. Without getting to the merits of the *Brady* claim, there has been no admission by the Commonwealth that it withheld exculpatory evidence; it continues to deny that it had any deal with Olbinsky. Second, unlike *Strickler*, here Jackson needed not speculate, based on the absence of documents in an "open file," that exculpatory material may have been withheld. As the single justice concluded, the bail agreement was "readily discoverable."

### c. Prejudice

 A showing of "prejudice" similarly evades Jackson. Without doubt, Olbinsky's testimony was key to the prosecution's case, and discrediting it might have changed the outcome of the trial. Jackson must prove more than that, however. He must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional · dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The standard for prejudice for purposes of procedural default in the *Brady* context is the same as the materiality element of a *Brady* claim: whether there is a "reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289, 119 S.Ct. 1936. " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of

confidence.' " *Id.* at 289–90, 119 S.Ct. 1936 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

 Here, however, Jackson alleges not only that the prosecutor failed to disclose the bail agreement, but also that he failed to correct Olbinsky's false testimony that he had received no promises or inducements. The prejudice standard for that claim is less stringent: whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 & n. 9, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Jackson contends that this standard applies, and that it is satisfied. Jackson Mem. at 32, 34. Because his *Agurs* claim relies on the assumption that the prosecutor was required to disclose the bail agreement (and thus that there was a *Brady* violation and *Strickler* prejudice), the Court begins with Jackson's *Strickler* claim.

In *Strickler*, a habeas petitioner was convicted of capital murder and sentenced to death based in part on the testimony of Anne Stoltzfus, who witnessed the abduction of the victim. 527 U.S. at 266, 119 S.Ct. 1936. After the petitioner's conviction was affirmed on direct appeal, he sought habeas corpus in the state courts, advancing an ineffective assistance of counsel claim based in part on trial counsel's failure to file a *Brady* motion. *Id.* at 278, 119 S.Ct. 1936. The state responded that the motion was unnecessary due to the prosecutor's "open file" policy, and the state supreme court agreed. *Id.* It was only during later federal habeas proceedings that, pursuant to a court order, the petitioner examined the police and prosecution files and discovered exculpatory evidence including documents prepared by Stoltzfus and notes of police interviews with her that "cast serious doubt on Stoltz-

fus' confident assertion [on the stand] of her 'exceptionally good memory.' " [7] *Id.* at 273, 119 S.Ct. 1936.

Acknowledging that discrediting Stoltzfus' testimony might have changed the outcome of the trial, the Supreme Court nevertheless concluded that the petitioner had failed to establish a "reasonable probability" of a different result. The court examined the evidence in great detail and determined that even if the Stoltzfus' testimony "had been entirely discredited," the jury still might have concluded that the petitioner participated in the killing, noting that there was "considerable forensic and other physical evidence linking petitioner to the crime," and that petitioner was seen driving the car in which the victim was abducted. *Id.* at 292–93, 119 S.Ct. 1936. The court also found strong record support for the conclusion that the petitioner would have been sentenced to death even had Stolzfus been severely impeached. *Id.* at 294, 119 S.Ct. 1936.

■ Prior to addressing the prejudice prong of the procedural default issue, the *Strickler* court first analyzed the merits of the *Brady* claim and determined that the first two elements—the evidence at issue must be favorable to the accused and have been suppressed by the State—were "unquestionably established by the record." As the Respondent points out, the case before this Court is different. Resp. Mem.

at 10. It still is not clear from the record that the Commonwealth entered into the bail agreement in exchange for Olbinsky's promise to testify, and Jackson has cited no authority requiring this Court to assume for purposes of the prejudice prong that the bail agreement was an inducement.[8] On this record, the Court agrees with the single justice that the bail agreement alone is insufficient to prove that the Commonwealth agreed to release Olbinsky in exchange for his promise to testify. First, the bail agreement is not explicitly conditioned on Olbinsky's testimony. Second, it was created twenty-one days after Olbinsky was released on bail as a result of his motion. There is no information in the record with respect to the Commonwealth's position on that motion. Third, there is no evidence that the prosecutor had any ability to obtain revocation of Olbinsky's bail if he (Olbinsky) later failed to testify at Jackson's trial. As the single justice explained, "Olbinsky's release on bail ... would presumably only be revoked for some violation of the terms of that release." Single Justice Order at 4.

There are two additional reasons supporting this Court's conclusion that Jackson has failed to show prejudice. First, here, as in *Strickler,* even were Olbinsky's testimony discredited, there was other evidence linking Jackson to the crime.[9] Sec-

---

**7.** There was no claim in *Strickler* that the prosecutor had knowingly used perjured testimony.

**8.** A court need not always examine the merits of a procedurally defaulted claim in order to determine whether there is prejudice. In fact, "[i]t may make sense, given the purpose of the procedural default doctrine, for courts to assume a meritorious claim in most cases and then go on to determine whether the error identified in the claim caused prejudice." *Tyler v. McCaughtry,* 293 F.Supp.2d 920, 927 (E.D.Wis.2003). *Accord Maupin v. Smith,* 785 F.2d 135, 139 (6th Cir.1986).

That fails in the *Brady* context, however, because if a court assumes that a *Brady* claim is meritorious, it must assume prejudice, because prejudice is an element of the claim.

**9.** Several witnesses testified besides Olbinsky, some of whom witnessed the crime but could not identify Jackson, and three others who saw Jackson after the crime and testified that he was carrying a shotgun, money, cocaine, and jewelry, and wearing a jacket similar to one described by a witness to the crime. Trial Tr. vol. 2, 177–79; vol. 3, 16–18, 131–47, 195–96. The latter witnesses testified that Jackson told them he had committed a rob-

ond, the alleged exculpatory evidence here, the bail agreement, is of a different nature than that in *Strickler*, where the undisclosed evidence struck at the very heart of the witness' (Stoltzfus') ability to remember the events at issue (and even so, its concealment was ruled not prejudicial). For example, in *Strickler*, an undisclosed handwritten note prepared by a police detective after an initial interview with Stoltzfus revealed that at that time, Stoltzfus (who later identified the petitioner at trial and claimed to have exceptionally good memory) could not identify the petitioner. *Strickler*, 527 U.S. at 272–73, 119 S.Ct. 1936. Here, in contrast, the alleged exculpatory evidence related to Olbinsky's bias, and, even if used, would have been duplicative of the impeachment accomplished when Olbinsky testified that there were charges pending against him at the time he made his initial statements to the police [10] and at the time of trial.

The above analysis ignores the information that has been uncovered with respect to the Oregon drug charge, particularly the fact that the bail agreement was entered into on the same day that Olbinsky was indicted in Oregon. It is possible that the Massachusetts authorities agreed to ask Oregon to recall its warrant in exchange for Olbinsky's promise to testify at Jackson's trial. Under this theory, if Olbinsky later refused to testify, the prosecutor may have had some ability to obtain revocation of Olbinsky's bail—by asking the Oregon authorities to issue another warrant. As discussed above, however, Jackson's claim pertaining to the Massachusetts authorities' interventions in Olbinsky's Oregon case is unexhausted and must be pursued in the state courts.

### d. Miscarriage of justice

Because Jackson has not established prejudice, the only remaining ground on which this Court may overlook Jackson's procedural default and consider the constitutional claim on the merits is if "its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir.1995). "This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Id.* Jackson has not met this burden.

### 3. Claim pertaining to intent to prosecute Olbinsky for murder

Jackson's final ground for habeas corpus relief is that the prosecutor misrepresented to the jury that Olbinsky, not sheltered by any deal, faced murder charges for involvement in the same crime. Jackson Mem. at 27–28. The Supreme Judicial Court rejected this claim, concluding: "Had the prosecutor revealed that Olbinsky was no longer in danger of being tried for this crime and that he knew it, that would have done far more for Olbinsky's credibility than did the silence to which [Jackson] now objects." *Commonwealth v. Jackson*, 428 Mass. 455, 459, 702 N.E.2d 1158 (1998). The Respondent does not challenge that the claim is exhausted, nor does it argue that the claim was decided on

---

bery during which the shotgun accidentally went off. *See, e.g.,* Trial Tr. vol. 3, 131–47. All three of these witnesses, however, were cocaine users or addicts, two had criminal records, and two admitted to using cocaine on the date of the incident. Trial Tr. vol. 3, 132–33, 218–20; vol. 4, 7, 48–50. Furthermore, there was no physical evidence linking Jackson to the crime.

**10.** It was not open to the Commonwealth to use this prior consistent statement to rehabilitate Olbinsky since certain charges were already pending against him at the time he made his initial statements to the police. *See* Mass. G. Evid. § 613(b)(2) (2008–2009).

independent and adequate state grounds. Pursuant to *Lundy's* total exhaustion requirement, the claim's merits may not be adjudicated at this time. 455 U.S. at 522, 102 S.Ct. 1198.

### B. Request for a Stay

■ Jackson asks that if this Court concludes that any claim is unexhausted, which it does, that it stay his petition rather than dismiss it. While Jackson does not cite *Rhines*, he does argue that there was "good cause" for his failure to present his claim pertaining to the Oregon charge to the state court: that the prosecutor affirmatively misrepresented that there was no deal. Jackson Mem. at 21–22. This is, of course, the same argument made by Jackson to demonstrate cause for his default of the bail agreement claim. While the Court has rejected the argument with respect to that claim, it finds it persuasive here. The difference is that there has been no determination by the Supreme Judicial Court that the information pertaining to the prosecutor's intervention in the Oregon charges was "readily discoverable" at the time of Jackson's trial. Nor could there have been. Whereas the bail agreement was entered on Olbinsky's Massachusetts murder docket prior to Jackson's trial, reference of the request by the Commonwealth to treat Olbinsky "nicely" was made only in discrete Oregon case-related materials, most of which were created after Jackson's trial. For example, Oregon's response to Olbinsky's motion to dismiss that stated in the facts that the "Boston authorities requested that the [Oregon] warrant be lifted as a courtesy," [Doc. 74] at 1, was signed in March 1996. The same information was relayed during Olbinsky's sentencing hearing, which occurred in May 1996. Other than the file notes, which were made contemporaneously with the request in 1992, these actions in Olbinsky's case occurred long after Jackson's 1993 trial.

It's certainly possible that all of this is for naught, as a gatekeeper justice may conclude that the information about the Suffolk County District Attorney's interventions in Oregon is not new because it "could have been addressed had [Jackson] properly raised it ... on [his] direct review," which was not resolved until 1998. *Ambers*, 397 Mass. at 707, 493 N.E.2d 837. That decision, however, is for the Commonwealth courts, not this one.

### C. Request for an Evidentiary Hearing

Jackson asks this Court to reconsider its denial of his request for an evidentiary hearing. Jackson Mem. at 19. In light of the Court's conclusions above, that the claim pertaining to the Oregon charges is unexhausted and the claim pertaining to the bail agreement is procedurally defaulted, the Court will not adjudicate the merits of any claim at this time and, therefore, the request for an evidentiary hearing is moot.

## II. CONCLUSION

Insofar as Jackson's petition claims a *Brady* violation due to the prosecutor's failure to disclose the bail agreement, it is denied. Otherwise, Jackson's petition is stayed pending further proceedings in the courts of the Commonwealth and this case is administratively closed. In light of the Supreme Court's command that "district courts should place reasonable time limits on a petitioner's trip to state court and back," *Rhines*, 544 U.S. at 278, 125 S.Ct. 1528, the stay is conditioned on Jackson's pursuing state court remedies within thirty days after the stay is entered and returning to this Court with a motion to reopen within thirty days after exhaustion is completed. *See Carmichael v. Warden,*

*Maine State Prison,* 370 F.Supp.2d 347, (D.Me.2005) (allowing thirty days after state court exhaustion).

SO ORDERED.